FILED
United States Court of Appeals
Tenth Circuit

January 29, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

PATRICK MERRILL BRODY,

Defendant-Appellant.

No. 11-4120

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:08-CR-00410-CW-1)**

---

Robert Henry Copier, Robert Henry Copier Law, Salt Lake City, Utah, for Appellant.

Alexander P. Robbins, Attorney, Tax Division (Frank P. Cihlar, Chief, Criminal Appeals & Tax Enforcement Policy Section, and Gregory Victor Davis, Attorney, Tax Division, with him on the brief) Department of Justice, Washington, D.C., for Appellee.

---

Before **KELLY**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Patrick Merrill Brody was convicted, after a jury trial, of willful failure to file a tax return, in violation of 26 U.S.C. § 7203. Brody was sentenced to ten

months' imprisonment and filed this appeal challenging both his conviction and sentence. The charges and conviction stemmed from Brody's failure to file a tax return for 2001.

Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM the judgment of the district court.

## I. Background

The record is inadequate to provide a full or reliable summary of the procedural and factual background for this appeal. What emerges from the parties' briefing suggests that Brody was the founder of Merrill Scott & Associates (MSA), a financial and tax consulting firm subject to a number of criminal and SEC investigations for financial improprieties. Although the original indictment charging Brody is not a part of the record on appeal, it appears that Brody was indicted on numerous conspiracy and money-laundering charges but that a number of these charges were dismissed. The failure-to-file charge apparently survived the motion to dismiss and Brody was ultimately convicted in a jury trial on this count.

In a filing before this court, counsel for Brody provided some insight as to why the record is so insufficient:

> Since the judgment below involved only a non-violent misdemeanor, Mr. Brody originally contemplated foregoing an appeal. But since he was sentenced to 10 months for this, his first criminal conviction, he decided to appeal. He initially intended to limit the appeal largely to

> an appeal of the 10 month sentence. He limited transcript preparation accordingly.
>
> But when the government independently decided to order and pay for the entire transcript, and that transcript was slated to be completed before the government filed its brief on appeal, Mr. Brody went ahead and briefed a challenge to the sufficiency of the evidence [among other claims].

Aplt. Mem. in Supp. of Mot. to Remand at 1 (Dec. 26, 2011).

In other words, when Brody learned that he could add claims to his appeal at no additional expense, his single-issue challenge to sentencing morphed into a multi-pronged attack on various rulings from the court below. In adding these claims, Brody assumed both that he could rely on the trial transcript ordered by the government and that this record would be available before he needed to file his opening brief and the related appendix (containing the record on appeal).

Brody's assumptions proved unwarranted. Brody realized that the trial transcript would not be ready by the time he needed to file his opening brief. Yet Brody had already asked for and was granted numerous extensions to file preliminary documents related to his appeal and to file his opening brief.

Thus, six days before the final due date for his opening brief, Brody moved to Defer or Dispense with an Appendix for the brief, invoking Federal Rule of Appellate Procedure 30(c)(1).[1] *See* Aplt. Mot. (Nov. 11, 2011). Brody argued

---

[1] Under Rule 30(c)(1), "[t]he court may provide by rule for classes of cases or by order in a particular case that preparation of the appendix may be deferred until after the briefs have been filed and that the appendix may be filed 21 days

(continued...)

that the government bore the burden of producing the relevant appendix.  He also

noted "[a]s further grounds for this motion, . . . that the government, in an

abundance of caution, recently ordered voluminous additional transcripts yet to be

transcribed." *Id*. at 2.

We denied Brody's motion.  In our order denying the motion, we noted:

> This is the appellant's appeal, and it is the appellant's – not the
> appellee's – responsibility to prepare an appendix that will permit
> adequate review by this court and that is in accordance with our
> rules.  A deferred appendix is not necessary or appropriate in this
> case.  Therefore, this motion is also denied.  The appellant must
> serve and file a complete appendix on or before Monday, November
> 21, 2011.  Failure to do so will result in the appeal proceeding
> without an appendix from the appellant (assuming the deadline in the
> previous paragraph is met).  "The court need not remedy any failure
> of counsel to provide an adequate appendix." 10th Cir. R. 30.1(A)(3).

Order (Nov. 14, 2011), at 2.

On November 19, 2011, Brody provided the limited record that this court

has for review of his appeal.  This record contains several motions Brody made in

the district court, a transcript of the closing arguments from his trial, a transcript

of what is referred to as Brody's "penultimate" sentencing hearing, and several

other forms related to sentencing. This record does not include any witness

---

[1](...continued)
after the appellee's brief is served."

testimony from Brody's trial or a transcript of the hearing at which the district court actually imposed a sentence.[2]

Brody nevertheless raises a number of claims that would require a review of items that are not provided in the record. For the reasons stated below, all of these claims fail, as Brody has failed to provide this court with the record we would need to assess each claim.

## II. Analysis

### A. *Providing an Adequate Record*

Under this court's Rules of Appellate Procedure, "[t]he appellant must provide all portions of the transcript necessary to give the court a complete and accurate record of the proceedings related to the issues on appeal." 10th Cir. R. 10.1(A)(1). In particular, "[w]hen sufficiency of the evidence is raised, the entire relevant trial transcript must be provided." *Id.* at 10.1(A)(1)(a); *see also* Fed. R. App. P. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the

---

[2] While the November 19, 2011 filing comprises the entire record on appeal, both parties cite to transcripts ordered by the government that were published after Brody had filed his opening brief and are not part of the record for this appeal (though they are available through the District of Utah's CM/ECF) *See, e.g.*, Aple. Br. at 4, 9, 14; Aplt. Mot. (Dec. 26, 2011), at 1. It is unclear why the government would cite these documents without supplying this court with a supplemental appendix. *See* 10th Cir. R. 30.2. ("An appellee who believes that the appellant's appendix omits items that should be included may file a supplemental appendix with the answer brief.").

appellant must include in the record a transcript of all evidence relevant to that finding or conclusion."); 10th Cir. R. 30.1(A)(3) ("The court need not remedy any failure of counsel to provide an adequate appendix.").

An appellant's "failure to file a trial transcript precludes review of a conviction for sufficiency of the evidence. By failing to file a copy of the trial transcript as part of the record on appeal, the appellant waives any claims concerning the sufficiency of the evidence at trial." *United States v. Vasquez*, 985 F.2d 491, 495 (10th Cir. 1993).

Further, outside of the context of a sufficiency-of-the-evidence claim, when an appellant fails to provide necessary parts of the record from the court below, our review is limited to the incomplete record that has been provided; and if the record provided is insufficient, this court must affirm the judgment of the court below. *See United States v. Dago*, 441 F.3d 1238, 1251 (10th Cir. 2006) ("Because the evidentiary record before us is insufficient to permit an assessment of [the appellant's] claim, we must affirm the judgment of the district court denying the relief that [the appellant] seeks."); *Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000) ("Where the record is insufficient to permit review we must affirm.") (citation omitted); *see also McGinnis v. Gustafson*, 978 F.2d 1199, 1201 (10th Cir. 1992) ("[F]ailure to file the required transcript involves more than noncompliance with some useful but nonessential procedural admonition of

primarily administrative focus. It raises an effective barrier to informed, substantive appellate review.").

   B. *Brody's Claims*

      1. *Sufficiency of the Evidence*

Brody's failure to provide an adequate record requires we dismiss all of his evidentiary claims. First, Brody argues the evidence presented to the jury at his trial was insufficient to support his conviction and that the jury had to draw improper inferences to convict. Brody also mixes challenges to the subject-matter jurisdiction of the district court, which we discuss below, with claims that the government did not present sufficient evidence about Brody's knowledge of an asset freeze order entered against Brody's company, which Brody alleges would have precluded him from paying any taxes in 2001.

Because Brody failed to provide a complete trial transcript, we cannot review his allegations that the evidence presented at trial was insufficient to support his conviction. *See Vasquez*, 985 F.2d at 494-95; *see also Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1105 (10th Cir. 1998) ("As it is the appellant's burden to prove [that the record is devoid of evidence sufficient to establish a particular claim], we have no choice but to assume that [the appellee]

submitted sufficient evidence to validate the jury's conclusion.") (citing *Vasquez*, 985 F.2d at 494-95).[3]

### 2. *Sentencing*

Next, Brody alleges the district court erred in sentencing him to ten months' imprisonment. He argues his sentence was based in part on a sentencing enhancement tied to the amount of "tax loss" incurred by the government. Brody asserts the government could not have incurred any "tax loss" on account of his failure to file a tax return. Therefore, reasons Brody, the district court erred in applying a sentencing enhancement based on a finding that Brody had caused a tax loss of $100,000.

Brody has provided us with very little in the record to evaluate whether the district court erred in sentencing him to ten months in prison. But Brody faces an even greater obstacle in seeking review of this alleged error: he has already completed his prison sentence. We therefore could not provide any redress for this claim even if he had provided us with an adequate record and even if we credited his arguments.

At oral argument, however, counsel for Brody seemed to imply that this claim was not moot: he suggested that this court could shorten Brody's term of

---

[3] Brody also has a pending motion that he believes could affect the standard of review this court would apply to his sufficiency-of-the-evidence claims. Yet his failure to provide a trial transcript renders this motion moot, as Brody's failure to provide an adequate record precludes *any* review of such claims. We therefore deny this motion.

-8-

supervised release through some sort of declaration that the prison sentence Brody served had been too long and the excess prison sentence should be credited against the length of Brody's term of supervised release.

Such an attempt to save the sentencing claim is precluded by precedent. Section 3624(e) of Title 18 provides that a prisoner's "term of supervised release commences on the day the person is released from imprisonment." In *United States v. Johnson*, 529 U.S. 53 (2000), the Supreme Court interpreted this statute to mean that a term of supervised release begins on the day someone is released from prison, regardless of whether the person was released after serving too much time. And *Johnson* dictates a court cannot credit the excess time served on a prison sentence against the time of supervised release. *See id*. at 53.

We recently reaffirmed *Johnson*'s application to circumstances similar to those presented here. In *Rhodes v. Judiscak*, 676 F.3d 931 (10th Cir. 2012), *cert. denied*, 133 S. Ct. 29 (2012), we rejected a habeas petitioner's argument that we could declare his sentence as too lengthy as a way to support a later motion for a modification of his term of supervised release. Because control over the terms of supervised release remains within the discretion of the sentencing court, we reasoned that such a declaration could not have more than a speculative effect on a possible modification of supervised release. *Id*. at 935.

In this case, Brody attacks the length of the original prison sentence, even though he is now only subject to a term of supervised release. In a notification

filed after oral argument, counsel for Brody further informed us that Brody has apparently violated the terms of his supervised release and has now been incarcerated once again for this violation. Yet this new term of imprisonment is a matter unrelated to Brody's original sentence for failure-to-file and one for which this court cannot grant relief merely by reevaluating the basis for that sentence.

But even if Brody were still incarcerated for his original failure-to-file conviction, we again note that the record is insufficient to properly understand his challenge to his sentence. Indeed, the only relevant record that Brody has provided is a transcript of a sentencing hearing held on April 1, 2011. This hearing concerned the amount of tax loss incurred by the United States as a result of Brody's failure to file a tax return. Under the United States Sentencing Guidelines (USSG), willful failure to file a return is a Level 6 offense, unless there is a tax loss incurred by the government, in which case the offense level increases as the amount of tax loss increases. *See* USSG § 2T1.1(a); *id.* § 2T4.1.

At this sentencing hearing, the government alleged that Brody's income for 2001 would have been $507,107.89, a number that the government appears to have derived from an exhibit it entered into evidence at trial. This figure seems to represent the amount of income Brody was paid in 2001 by MSA. *See* R., Hr'g Tr. at 6-7.[4] The government appears to have shown at trial that the money Brody

_____

[4] It is difficult to fully understand the government's method for calculating this sum, as Brody has failed to provide this court with the exhibits used at the sentencing hearing.

-10-

received from MSA was income (and not a loan). The government represented at the sentencing hearing that the tax loss should be calculated as 20 percent of this sum. In support of this position, the government cited note 2(a) of USSG § 2T1.1(a), which recommends:

> If the offense involved failure to file a tax return, the tax loss shall be treated as equal to 20% of the gross income . . . less any tax withheld or otherwise paid, unless a more accurate determination of the tax loss can be made.

Based on the formula prescribed here, the government suggested a base offense level of 16.

Although the district court did not reject the government's calculations or recommendation, the court questioned whether MSA had paid any tax on the $507,107.89. The district court reasoned that if MSA had paid tax on this income, such a payment could have a bearing on calculating the tax loss, thereby potentially lowering the base offense level. The hearing transcript ends with the parties agreeing to set another date for sentencing, scheduled for May 6, 2011, at which the government would report to the district court whether it had discovered that MSA had paid any tax on Brody's income.

Brody has not provided this court with the transcript of the May 6, 2011 sentencing hearing nor has he provided a copy of the presentence report identifying his prior criminal history or any other factors that could have had a

bearing on his sentence.[5]  Based on the record provided, it is impossible to

conclude much of anything about the basis or propriety of Brody's sentence.

Thus, even if this claim were not moot, it would fail because of the insufficiency

of the record provided.

### 3. Prosecutorial Misconduct

Brody also claims the government committed prosecutorial misconduct by

making inappropriate references to Brody's religion and personal life.  He argues

that this misconduct occurred both during the prosecution's presentation of

evidence and in its closing argument.  The record Brody provided to this court

reflects that Brody moved for a new trial on these grounds in the district court and

that the district court denied the motion.  Yet because Brody has not provided a

record of the trial transcript, our review of this claim is limited to any misconduct

that may have been committed by the prosecutor during closing argument.  He

thus rests his case on a single statement made by a prosecutor, which Brody

claims mocked his religion.  The statement reads in pertinent part:

> Now, the defendant is the kind of man who will have his attorney
> wave an empty LDS donation slip in front of you. He'll go out of his
> way to tell you he's a fan of Ronald Regan [*sic*], a tea party
> sympathizer, and a principal advocate for smaller government and
> lower tax rates.

---

[5] The only other sentencing-related document in the record is a six-page judgment sheet filed in the district court, which (as is typical) merely lists the disposition of his case, the sentence imposed, and other logistical information related to Brody's sentence.

R., Hr'g Tr. at 45. Without the benefit of the full trial transcript, it is difficult to interpret the statement one way or the other. Based solely on this record, however, we have insufficient information to make a judgment on this claim. We therefore affirm the district court's decision denying Brody's motion for a new trial based on prosecutorial misconduct.

### 4. *Statute of Limitations*

Finally, Brody argues that an asset freeze order entered against him on January 15, 2002, released him from the obligation of filing a tax return reporting income earned in 2001. He suggests that the 2002 order somehow required the government to prove that Brody's intent to defraud the government existed before January 15, 2002. Because Brody was not indicted until over five years after January 15, 2002, and because the statute of limitations for this crime is five years, Brody concludes that the district court was deprived of subject-matter jurisdiction over his criminal case, as the claim would have been time-barred.

This claim also fails for want of a sufficient record. As an initial matter, Brody erroneously suggests that this claim implicates the subject matter jurisdiction of the district court, is not waivable, and is subject to *de novo* review. To the contrary, a claim that a criminal charge is time-barred by a statute of limitations is an affirmative defense: successfully raising this defense does not deprive a district court of subject matter jurisdiction, and the claim can be

waived. *See United States v. Cooper*, 956 F.2d 960, 962 (10th Cir. 1992); *United States v. Gallup*, 812 F.2d 1271, 1280 (10th Cir. 1987).

Brody has waived this claim. Although he alleges that the claim was raised below, he provides no proof supporting this contention. He has not provided, for example, a motion to dismiss the indictment or any other record that would allow this court to conclude that this claim has been preserved. It therefore fails.[6]

## III. Conclusion

Based on the foregoing analysis, we DENY Brody's motion for a remand and AFFIRM the district court's sentence and judgment.

---

[6] Even if we reached the merits, it is clear that Brody had a legal obligation to file a tax return for 2001 regardless of his legal problems in 2002.