**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 17, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff–Appellee,

    v.

MICHAEL SHERMAN TOLLIVER,

        Defendant–Appellant.

No. 12-5077

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 4:10-CR-00141-JHP-1)**

---

William D. Lunn, Tulsa, Oklahoma, for Defendant–Appellant.

Jeffrey A. Gallant, Assistant United States Attorney (Ryan Souders and Catherine Depew, Assistant United States Attorneys, and Danny C. Williams, Sr., United States Attorney, Northern District of Oklahoma, with him on the brief), Tulsa, Oklahoma, for Plaintiff–Appellee.

---

Before **HARTZ**, **McKAY**, and **MATHESON**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

    Following a jury trial, Defendant was convicted of two counts of using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1), and two counts of arson, in violation of 18 U.S.C. § 844(i). He was sentenced to 430 months'

imprisonment. Defendant now appeals his conviction and sentence.

## BACKGROUND

Prior to his conviction, Defendant was a real estate investor who owned several properties in Oklahoma. He would purchase the properties and renovate them, either to resell or maintain as rental properties. Between the years 2000 and 2003, Defendant experienced fires at four of his properties, each resulting in a total loss of the property. The first occurred in October 2000 at a commercial building Defendant owned in Claremore, Oklahoma; the second in May 2001 at a residential property Defendant owned on South Indian Avenue in Tulsa, Oklahoma; the third in November 2002 at a residential property Defendant owned on Joplin Place in Tulsa, Oklahoma; and the fourth in March 2003 at a residential property Defendant owned on 31st Street in Tulsa, Oklahoma. The cause of each of these fires were determined by the relevant fire investigators to be incendiary—that is, intentionally set.

Following each of the fires, Defendant submitted a claim of loss to his insurance provider. In connection with the South Indian, Joplin, and 31st Street Fires, Defendant submitted a claim for lost rent as part of the claim of loss. To substantiate these claims, Defendant submitted purported leases between himself and his friend Sam Hill for the South Indian and 31st Street properties, and a purported lease between himself and an employee, Tommy Sheppard, for the Joplin property. However, Mr. Hill had never lived or intended to live in the

-2-

South Indian property, nor had Mr. Sheppard ever lived or intended to live in the Joplin property. And, while Mr. Hill lived in the 31st Street property up until the fire, he had never had a written lease with Defendant and did not intend to live in the 31st Street property for the time period that was the subject of the purported lease.

Shortly after the 31st Street fire, agents with the Tulsa Fire Department and the Bureau of Alcohol, Tobacco, Firearms and Explosives began investigating a possible connection between the Joplin fire and the 31st Street fire. Through an interview with Mr. Hill, the agents learned more about the Claremore and South Indian fires and began to suspect Defendant's involvement in the four fires. Defendant was ultimately indicted in September 2010 and charged with eight counts: one count of using fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1), and one count of arson, in violation of 18 U.S.C. § 844(i), in connection with each of the four fires. Following a jury trial, Defendant was acquitted on the two counts related to the Joplin fire and convicted on the four counts related to the South Indian and 31st Street fires. The jury was unable to reach a verdict on the two counts related to the Claremore fire, and those counts were dismissed. Defendant was then sentenced to 430 months' imprisonment and ordered to pay $94,277.51 in restitution. The district court additionally entered a consent order of forfeiture against Defendant, ordering him to forfeit $92,453.11 in favor of the government. Defendant now appeals his conviction and sentence.

-3-

**DISCUSSION**

Defendant raises eight arguments on appeal: (1) there was insufficient evidence to support his convictions, (2) the district court erred in denying Defendant's post-trial motion to dismiss the § 844(h)(1) charges for lack of jurisdiction, (3) the district court erred in denying Defendant's post-trial motion for a new trial based on allegedly improper questions by the government, (4) the district court erred in denying Defendant's post-trial motion for a new trial based on newly discovered evidence, (5) the district court erred in sentencing Defendant to the statutory minimum of twenty years for his second conviction under § 844(h)(1) because both convictions under that section arose in the same case, (6) the district court erred in sentencing Defendant to consecutive sentences for his convictions under § 844(h)(1) and (i) because the charges arose from the same conduct, (7) Defendant's 430-month sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment, and (8) the district court erred in entering the criminal forfeiture money judgment in addition to ordering Defendant to pay restitution. We address each argument in turn.

## I. Sufficiency of the Evidence

Defendant raises two challenges to the sufficiency of evidence to support his conviction. First, he argues the government failed to present sufficient evidence that the South Indian and 31st Street properties were used in or affecting interstate commerce, as required for conviction under § 844(i). Second,

Defendant argues there was insufficient evidence to support his guilt on the four counts of conviction because a rational jury could not find that he caused the fires. We review these challenges to the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government. *United States v. Parada*, 577 F.3d 1275, 1283 (10th Cir. 2009). In doing so, "[w]e must not weigh conflicting evidence or consider the credibility of the witnesses, but simply determine whether the evidence, if believed, would establish each element of the crime." *Id.* (internal quotation marks omitted). "We reverse only if no rational jury could have found each element of the crime beyond a reasonable doubt." *Id.*

## A. *Interstate Commerce*

Under 18 U.S.C. § 844(i), it is unlawful to "maliciously damage[] or destroy[], or attempt[] to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." As the Supreme Court has explained, by including in § 844(i) "the qualifying words 'used in' a commerce-affecting activity," "Congress required that the damaged or destroyed property must itself have been used in commerce or in an activity affecting commerce." *Jones v. United States*, 529 U.S. 848, 854 (2000) (internal quotation marks and brackets omitted). Accordingly, the proper two-step inquiry to determine whether the interstate commerce element of § 844(i) is satisfied is first to look "into the function of the building itself, and then [to determine]

whether that function affects interstate commerce." *Id.* (internal quotation marks omitted).

Defendant concedes that the rental of real estate—the purported use of the South Indian and 31st Street properties—is an "activity that affects commerce." *Russell v. United States*, 471 U.S. 858, 862 (1985) (internal quotation marks omitted). He nevertheless argues the government failed to present sufficient evidence that either of the properties satisfied the interstate commerce requirement.

With respect to the South Indian property, Defendant maintains the evidence showed only that the property "had a 'past connection' to commerce," not that it was actively employed for commercial purposes as required by § 844(i). (Appellant's Opening Br. at 20 (quoting *Jones*, 529 U.S. at 855).) In support of this argument, Defendant characterizes the property at the time of the fire as "vacant, damaged, 'rough'" and not having "been rented for at least three months." (*Id.*) However, Mr. Hill testified that on the date of the fire in May 2001, the South Indian property was being used as a rental, with "a gentleman by the name of Kenny" living in the property at that time. (Appellant's App. at 72.) Defendant did not call Mr. Hill's testimony on this point into question during cross-examination or through other witnesses. From this testimony alone, a rational jury could conclude the South Indian property was actively employed as a rental property at the time of the fire. This conclusion is further supported by the

-6-

evidence that Defendant had insured the property as a rental property at the time of the fire.

Defendant argues that no rational jury would believe Mr. Hill's testimony in light of evidence contained in two government exhibits submitted to the jury. Specifically, Defendant relies on the fire investigator's description of the South Indian property, contained in the Tulsa Fire Department investigation report, as "vacant with some furnishings and personal effects left by the previous tenant," including "newspapers with a date of February 2001." (*Id.* at 1592, 1593 (capitalization standardized).) Defendant additionally relies on the insurance provider's Property Insurance Loss Register, which contains a record of a statement made by Defendant that "[t]he previous ten[]ant moved out one month prior to the fire" and a record of a statement by a postal worker that "the house was vacant ever since [February 2001]." (*Id.* at 1607 (capitalization standardized).) Although these documents appear in the record and were submitted to the jury, the record does not reveal that the statements themselves or the significance of the documents more generally were ever called to the jury's attention. Even if we assume the jury nevertheless considered the statements on which Defendant now relies, they merely conflict with Mr. Hill's testimony. Viewing the evidence in the light most favorable to the government, as we must, and without weighing the conflicting evidence, we conclude a rational jury could find, based on Mr. Hill's testimony and the corroborating fact that Defendant

maintained rental insurance on the property, the South Indian property was actively being rented on the date of the fire.

Turning to the 31st Street property, Defendant argues it had only a minimal and passive connection to interstate commerce that is insufficient to sustain a conviction under § 844(i). Although acknowledging he had an "agreement with Sam Hill to allow [Mr. Hill] to live" at the 31st Street property, Defendant maintains the agreement "was not a commercial rental enterprise." (Appellant's Opening Br. at 24.) Rather, he emphasizes the 31st Street property was intended to eventually be used as the family home for him and his wife. Based on this fact, Defendant attempts to characterize the agreement with Mr. Hill as one under which Mr. Hill was permitted to temporarily stay at the property in the meantime as a "caretaker" in exchange for reimbursement for utilities only. (Appellant's Reply Br. at 4.) This characterization, however, is not supported by the record. To the contrary, Mr. Hill testified that he rented the 31st Street property from Defendant for $800 a month for him and his two daughters. (Appellant's App. at 94, 97, 101.) Consistent with this testimony, the government introduced a personal money order made out to Mrs. Tolliver on September 30, 2002, for $800 (*id.* at 1635) that Mr. Hill stated "would have obviously been for, I would assume rent that—for rent due on October 1" (*id.* at 100). Mr. Hill also testified he lived in the house in March 2003, the month of the fire, although he had moved most of his belongings out shortly before the fire occurred. Furthermore, at the time of

-8-

the fire, Defendant maintained a dwelling insurance policy on the 31st Street property, which, unlike a homeowner's policy, provided coverage for a property occupied by a tenant. From this evidence, a rational jury could conclude that the 31st Street property was being used as a rental property at the time of the fire.

To the extent Defendant argues that Mr. Hill's rental of the 31st Street property does not satisfy the interstate commerce requirement of § 844(i) because Defendant's renting of the property was not a commercial enterprise in light of the specific circumstances surrounding his decision to rent to Mr. Hill, the Seventh Circuit has rejected a nearly identical argument. In *United States v. Veysey*, 334 F.3d 600 (7th Cir. 2003), the defendant, who had been convicted under 18 U.S.C. § 844(i), argued the house he set on fire did not satisfy the interstate commerce requirement because although "[t]he house was rented[,] . . . the owner was not engaged in a commercial activity, as was the apartment house owner in *Russell*." *Id.* at 603. Rather, "[t]he owner of the house that [the defendant] rented was a typical householder, who after living in the house for several years had moved to another state and after trying unsuccessfully to sell the house decided to rent it." *Id.* The Seventh Circuit refused to draw a distinction between those property owners who are in the business of renting and those who are "accidental renter[s]" as was the homeowner in that case. *Id.* It explained that doing so "would imply a need to inquire in every case into the motives for renting, and the inquiry would complicate decision making without

offsetting gain." *Id.* Despite the fact the property owner "didn't *want* to be in the real estate rental business," the court concluded that "he was," placing the case squarely within the holding of *Russell*. *Id.*

We agree with the reasoning of the Seventh Circuit and decline to inquire into Defendant's motives for renting the 31st Street property to Mr. Hill. Regardless of why Defendant rented the property to Mr. Hill—whether for Mr. Hill to be a "caretaker" or simply as a favor to his friend—the government presented sufficient evidence from which a rational jury could conclude that Defendant *did* rent the property to Mr. Hill, an activity that "unquestionably" affects interstate commerce, *Russell*, 471 US. at 862.

Based on the foregoing, we conclude there was sufficient evidence from which the jury could find both the South Indian property and the 31st Street property were being used in interstate commerce at the time of the fires.

## B. *Evidence of Guilt*

In his second challenge to the sufficiency of the evidence, Defendant argues there was insufficient evidence to support his convictions because there was insufficient evidence from which a rational jury could find that he caused the two relevant fires. In support of this argument, Defendant contends that "two factors [that] invariably apply to situations where buildings owned by a defendant are burned down for the purpose of collecting insurance proceeds" were absent in this case: that "defendant was in financial distress and the fire itself contained

-10-

multiple points of origin, usually involving a highly flammable substance."
(Appellant's Opening Br. at 26.) He then analogizes this case to *United States v. Yoakam*, 116 F.3d 1346 (10th Cir. 1997), in which we concluded there was insufficient evidence to support the defendant's conviction for arson because the defendant's "mere presence [at the scene] cannot establish beyond a reasonable doubt that [he] committed the arson." *Id.* at 1350.

As an initial matter, Defendant's reliance on the lack of evidence that he was in financial distress and that the fire contained multiple points of origins is misplaced. While these two facts may very well be present in a number of arson and related cases (*see* Appellant's Opening Br. at 26 (citing cases)), neither is a required element of a violation of § 844(i) or § 844(h)(1). Rather, as the jury was instructed, in order to establish that Defendant violated § 844(i), the government was required to prove beyond a reasonable doubt only the following elements: "First, that the defendant set fire to damage or destroy, or in an attempt to damage or destroy property. Second, that the property was used in or affecting interstate or foreign commerce. Third, that the defendant acted maliciously." (Appellant's App. at 1998.) And the government needed to prove only two elements to establish a violation of § 844(h)(1): "First, that the defendant committed a felony for which he may be prosecuted in a court of the United States[, in this case, mail fraud]. Second, that the defendant used fire to commit that felony." (*Id.* at 1992.) To the extent Defendant argues that the alleged lack of evidence of a

financial motive, although not a required element of the crime, nevertheless invalidates his conviction, he is mistaken. As we have previously explained, "[m]otive, unlike *mens rea*, is not an essential element of a criminal offense. It is an explanation that may tend to make a party's theory of the case seem more plausible or understandable; but the absence of any proof bearing on a defendant's motive may not support a motion for a judgment of acquittal." *United States v. Santistevan*, 39 F.3d 250, 255 n.7 (10th Cir. 1994).

Turning then to the required elements of the offenses, Defendant appears to argue the government failed to present sufficient evidence to satisfy the first and third elements of § 844(i) and the second element of § 844(h)(1)—that he maliciously "set fire to damage or destroy" the South Indian and 31st Street properties and that he "used fire" to commit mail fraud. He maintains that "no reasonable jury would find that the fires that destroyed both the houses . . . were not the result of negligent or accidental conduct but were intentional, malicious and actively employed by [him]." (Appellant's Opening Br. at 29.) However, the government offered the testimony of Mr. Hill that Defendant had intentionally set both fires. Specifically, Mr. Hill testified that Defendant had told him he wanted to burn down the South Indian property "[f]or the insurance money, and [because] he wanted to clear that lot to maybe build duplexes." (Appellant's App. at 73.) Indeed, Mr. Hill had been present at the South Indian property approximately two to three weeks prior to the fire when Defendant had unsuccessfully attempted to

-12-

burn down the home. He was again with Defendant on the night when Defendant successfully set fire to the South Indian property. On that evening, Defendant told Mr. Hill they were "going over [to the South Indian property] to burn it down." (*Id.* at 79.) Once at the property, Defendant took a pump with kerosene in it into the home. (*Id.* at 80.) Mr. Hill recalled hearing Defendant pumping the sprayer inside the house and "fluid somewhat dripping on the floor or hitting the walls." (*Id.* at 81.) Defendant then exited the house and said that "it was burning . . . , he got the thing lit, let's go." (*Id.* at 82.) Defendant and Mr. Hill then drove around for approximately a half hour waiting to "make sure that . . . [they] could see smoke coming out, or flames, or both." (*Id.* at 83.)

Mr. Hill likewise testified that Defendant intentionally set fire to the 31st Street property. Prior to the fire at that property, Defendant had told Mr. Hill he wanted to burn down the house because "the piece of property was worth more than the house." (*Id.* at 104-05.) Mr. Hill was again with Defendant on the night of the fire. He testified that Defendant came over to the 31st Street property that evening during a party Mr. Hill's daughter was having at the house. After the party broke up, Defendant went downstairs into the basement. He then "came up from downstairs" carrying a spray bottle "and made a comment that we got to go, the—it's—it's on fire." (*Id.* at 122.) Mr. Hill and Defendant then left the house and returned sometime later after receiving a call to go back to the fire. Before returning, Defendant instructed Mr. Hill "to say there was arcing in the lines"

-13-

when they got back to the 31st Street property. (*Id.* at 128.)

Mr. Hill's testimony regarding the cause of the South Indian and 31st Street properties was corroborated by additional evidence. The Tulsa Fire Department captain who investigated the South Indian property concluded the fire was an "intentional[] arson fire" (*id.* at 643) and "an ignitable liquid [had been] introduced to the scene" (*id.* at 650). And, consistent with Mr. Hill's testimony, it was determined that a "Class 4 heavy ranging ignitable liquid," which includes kerosene and diesel, was present at the scene. (*Id.* at 706.) The ATF agent investigating the 31st Street fire likewise concluded the fire was incendiary, or intentionally set, with the area of origin in the basement as Mr. Hill had testified. Again, consistent with Mr. Hill's testimony, it was determined that a medium range ignitable liquid, which includes paint thinners and specialty solvents, was present at the scene.

In light of this evidence, a rational jury could do more than speculate, *see Yoakam*, 116 F.3d at 1350, as to the cause of the fires at the South Indian and 31st Street properties. Even if, as Defendant suggests, there are some weaknesses in Mr. Hill's testimony, viewing the evidence in the light most favorable to the government and without making any credibility determinations, we conclude a rational jury could find that Defendant was not only present at the scene of the fires, but that he maliciously set the South Indian and 31st Street properties on fire to damage or destroy them. A rational jury could, therefore, additionally find

-14-

that by setting the properties on fire, Defendant "used fire" to commit mail fraud. Accordingly, there was sufficient evidence to sustain each of Defendant's four convictions.

## II. Jurisdiction Over § 844(h)(1) Charges

Following his conviction, Defendant filed a motion to dismiss, arguing that the district court lacked subject matter jurisdiction over the § 844(h)(1) charges because the five-year statute of limitations for the predicate mail fraud offense had run. The district court denied Defendant's motion. We review this denial de novo. *See United States v. Brown*, 164 F.3d 518, 521 (10th Cir. 1998).[1]

Defendant maintains that although the § 844(h)(1) charges were timely filed within the ten-year statute of limitations for § 844(h)(1), the fact the limitations period had run on the uncharged predicate mail fraud offenses deprived the district court of subject matter jurisdiction because there was no longer an underlying "felony which may be prosecuted in a court of the United States," 18 U.S.C. § 844(h)(1). He finds support for this position in the

---

[1] The government contends that Defendant waived his argument, which it characterizes as one based on the statute of limitations, by failing to raise it during trial. *See United States v. Gallup*, 812 F.2d 1271, 1280 (10th Cir. 1987) ("It is well settled that the statute of limitations is an affirmative defense which is waived unless raised at trial."). However, Defendant has not asserted an affirmative defense based on the statute of limitations. Rather, his motion to dismiss was based on the court's alleged lack of jurisdiction, which is an issue that may be raised "at any time while the case is pending." Fed. R. Crim. P. 12(b)(3)(B).

explanation of the constitutionality of § 844(h): this section comes within Congress's authority to regulate interstate commerce because it contains a "jurisdictional nexus . . . derived from the underlying felony, which must be one that 'may be prosecuted in a court of the United States.' By definition, then, a violation of § 844(h) must necessarily be based on an underlying crime that is properly within federal jurisdiction." *United States v. Creech*, 408 F.3d 264, 267 (5th Cir. 2005). According to Defendant, this explanation "suggest[s] the underlying felony cannot be prosecuted when the statute of limitations has run on it." (Appellant's Opening Br. at 32.)

Defendant's argument, while novel, fails for two reasons. First, "the government did not need to indict [Defendant] for or convict him of the predicate offense [of mail fraud] in order to obtain a conviction for violation of § 844(h)(1)." *United States v. Gross*, 199 F. App'x 219, 231 (4th Cir. 2006). Although we have not confronted this issue before in the context of § 844(h)(1), we have addressed and rejected similar arguments in the context of a charge brought under 18 U.S.C. § 924(c)(1). *See, e.g.*, *United States v. Barrett*, 496 F.3d 1079, 1094 (10th Cir. 2007) ("[I]t is unnecessary for a criminal defendant charged with a § 924(c) offense to be separately charged with and convicted of the underlying offense."); *United States v. Hill*, 971 F.2d 1461, 1464 (10th Cir. 1992) (en banc) ("While proof of the underlying crime is necessary to convict under § 924(c), a defendant need not be convicted of the underlying crime in order to be

convicted of § 924(c).  A defendant need not even be charged with the underlying crime to be convicted under § 924(c)." (citations omitted)).  Because the government was not required to indict Defendant on the predicate mail fraud offenses, Defendant's focus on the running of the five-year statute of limitations for that offense is misplaced.

Second, Defendant has failed to establish that federal jurisdiction is lacking over the predicate offense of mail fraud, 18 U.S.C. § 1341.  To the extent Defendant argues the running of the five-year statute of limitations deprived the district court of jurisdiction, we recently explained this is not the case:  "[A] claim that a criminal charge is time-barred by a statute of limitations is an affirmative defense:  successfully raising this defense does not deprive a district court of subject matter jurisdiction . . . ."  *United States v. Brody*, 705 F.3d 1277, 1284 (10th Cir. 2013).  And Defendant has offered no other argument as to why the predicate mail fraud offenses—which, although uncharged, the government was required to prove—are not "felon[ies] which may be prosecuted in a court of the United States," 18 U.S.C. § 844(h)(1).  Accordingly, the district court did not err in denying Defendant's motion to dismiss.

### III.  Allegedly Improper Questions by the Government

In his third claim of error, Defendant argues he is entitled to a new trial based on three allegedly improper questions asked by the government during trial. Defendant refers to two instances in which the government questioned whether

-17-

Defendant had a sexual relationship with Kim Hayes, a former tenant of the Joplin property.  The district court sustained Defendant's objection to both lines of questioning and, in response to the first objection, instructed the jury to disregard the government's statement.

On appeal, Defendant argues "[t]he prosecutor's repeated questions to witnesses insinuating [Defendant] had had a sexual relationship with one of his tenants so prejudiced him that he should receive a new trial."  (Appellant's Opening Br. at 33 (capitalization standardized).)  Although less than clear, we perceive Defendant to be making one of two arguments:  (1) the government's questions constituted prosecutorial misconduct requiring a new trial, or (2) the district court erred in failing to *sua sponte* declare a mistrial based on the allegedly improper questions.  Ordinarily, we "review[] de novo whether prosecutorial misconduct occurred," *United States v. Magallanez*, 408 F.3d 672, 679 (10th Cir. 2005) (internal quotation marks omitted), and "review a district court's refusal to grant a mistrial for abuse of discretion," *United States v. Meridyth*, 364 F.3d 1181, 1183 (10th Cir. 2004).  Here, however, our review is for plain error because "defense counsel did nothing to highlight to the court his concern about the effect of the prosecutor's question[s] after his objection was sustained."  *United States v. Baldridge*, 559 F.3d 1126, 1135 (10th Cir. 2009); *see also United States v. Taylor*, 514 F.3d 1092, 1096 (10th Cir. 2008) (applying plain error review to the defendant's contention "that, even after the district

court's instructions to the jury, there remained a modicum of uncured prejudice sufficient to imperil his right to a fair trial" because he "did not . . . alert the district court to his belief on this score"—"[h]e neither advanced a contemporaneous objection to the district court's curative instruction, nor moved for a mistrial").[2]

Aside from asserting that "the jury was undoubtedly impressed with [the government's] continuing insistence that Appellant had had an illicit sexual relationship with one of his tenants" (Appellant's Opening Br. at 37), Defendant has offered no explanation as to why the three questions posed by the government constitute prosecutorial misconduct. To the extent his argument is based on his

---

[2] Defendant maintains his argument was "squarely presented to the district court" through his "contemporaneous objections at the time of trial" and his "thorough analysis in his motion for new trial." (Appellant's Reply Br. at 11 (internal quotation marks omitted).) However, as in *Baldridge* and *Taylor*, Defendant did nothing to alert the district court to his persisting concerns after his objections had been sustained and, in the first instance, the district court had given a curative instruction. Nor did Defendant request a new trial on this basis. Rather, Defendant argued he was entitled to a new trial based on newly discovered evidence, including evidence that shortly after Defendant's trial, Ms. Hayes was charged with a misdemeanor for presenting a "bogus check." (Appellant's App. at 2080.) He later clarified his belief that this "newly discovered evidence . . . is *Brady* material" (*id.* at 2116), and argued it was favorable to him because "the suppressed impeachment evidence of [Ms. Hayes's] outstanding 'Bogus Check' would have affected the defense cross-examination as to her credibility on this very prejudicial issue of a relationship" (*id.* at 2129). Although Defendant opined that "the Government's smear campaign undermines the confidence in all of the verdicts," he did not argue that prosecutorial misconduct or the prejudicial nature of the questions warranted a new trial. Defendant has not pursued his *Brady* argument on appeal.

-19-

belief that the government repeatedly disregarded "the district court's stern and immediate admonition" (*id.* at 34) to steer clear of the issue of the alleged sexual relationship, the record simply does not support Defendant's assertion that any such admonition was given. (*See* Appellant's App. at 828 (admonishing "*the jury to disregard counsel's statement in regard to the issue of a sexual relationship,*" but making no admonishment to the government (emphasis added), 1403 (permitting the government to attempt to "ask [the question] another way" after sustaining Defendant's objection because it was necessary "to wait and see what [the government was] going to ask" ).) Defendant likewise has failed to establish it was plain error for the district court to fail to *sua sponte* declare a mistrial or issue further curative instructions. *See Taylor*, 514 F.3d at 1100 (explaining there is no authority to support the defendant's "proposition that the district court was clearly obliged under the circumstances to grant a mistrial *sua sponte* in response to a remark already the subject of a curative instruction"). Accordingly, we find no reversible error in the district court's treatment of the government's questions regarding the alleged sexual relationship. This is particularly true given Ms. Hayes's admission that her "relationship [with Defendant] became physical" after she had "known him close to two years" (Appellant's App. at 986) —evidence Defendant has not challenged on appeal.

## IV. Newly Discovered Evidence

Defendant additionally filed a post-trial motion for a new trial based on

newly discovered evidence. Among other things, Defendant argued he recently discovered that Mr. Sheppard, one of the government's witnesses, had previously told one of Defendant's fellow inmates that he and Mr. Hill had burned down two properties owned by Defendant—one "close to 12 & 12 off 36th St.," and the other "at 31st & Utica"—"in retaliation against [Defendant] for some reason or another." (*Id.* at 2091 (superscript omitted).) In support of this motion, Defendant submitted an affidavit from the fellow inmate in which he described his previous conversation with Mr. Sheppard. The district court denied Defendant's motion. We review this denial for abuse of discretion. *United States v. Herrera*, 481 F.3d 1266, 1270 (10th Cir. 2007).

To prevail on his motion for a new trial based on newly discovered evidence, Defendant was required to show: (1) the evidence was discovered after trial, (2) the failure to learn of the evidence was not caused by Defendant's own lack of diligence, (3) the new evidence is not merely impeaching, (4) the new evidence is material, and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal. *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997). The government concedes that the fellow inmate's allegations were discovered after trial and that Defendant's failure to discover those allegations earlier was not due to a lack of diligence. However, the government maintains Defendant's newly discovered evidence constitutes inadmissible hearsay that could only be used for impeachment purposes, and

-21-

therefore fails to satisfy the third requirement.

Specifically, the government argues Defendant intended to offer his fellow inmate's recollection of Mr. Sheppard's previous out-of-court statement to prove the truth of the matter asserted—that Mr. Sheppard and Mr. Hill set the two fires—which is prohibited by Federal Rule of Evidence 802. In response, Defendant contends the evidence is not hearsay because it qualifies as a prior inconsistent statement under Rule 801(d)(1)(A). Under this rule, a prior statement made by a declarant–witness who is subject to cross-examination about the statement is not hearsay as long as the prior statement "is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition." Fed. R. Evid. 801(d)(1)(A). Here, however, Mr. Sheppard's alleged prior inconsistent statement was not given under penalty of perjury. Rather, the statement was made to Defendant's fellow inmate while he and Mr. Sheppard were "on Federal Probation" together. (Appellant's App. at 2090.) Defendant's newly discovered evidence therefore does not qualify as non-hearsay under Rule 801(d)(1)(A), nor does it satisfy any of the exceptions to the rule against hearsay.[3]

---

[3] Under certain circumstances, this alleged statement might qualify under the hearsay exception for statements against interest. *See* Fed. R. Evid. 804(b)(3). Under this rule, hearsay can be admitted for its truth if: (1) the declarant is considered to be unavailable to testify, for example, because of privilege, refusal to testify, or failure of memory, Fed. R. Evid. 804(a); (2) the statement was so

(continued...)

Because Mr. Sheppard's alleged prior inconsistent statement is inadmissible hearsay, the government is correct that it at most constitutes impeachment evidence. Such evidence cannot serve as the basis for a new trial. *United States v. Youngpeter*, 986 F.2d 349, 356 (10th Cir. 1993) ("The alleged newly discovered evidence must be more than impeaching or cumulative." (internal quotation marks omitted)). We therefore see no error in the district court's denial of Defendant's motion for a new trial based on newly discovered evidence.

---

[3](...continued)
contrary to the declarant's interest that a reasonable person would only make it if he believed it to be true, Fed. R. Evid. 804(b)(3)(A); and (3) corroborating circumstances clearly support the statement's trustworthiness, Fed. R. Evid. 804(b)(3)(B).

Mr. Tolliver did not mention this rule in his briefing or, as far as we know, to the district court. But even if he had preserved this argument, the theoretical possibility of this statement becoming admissible under Rule 804(b)(3) is too speculative to justify a new trial. Mr. Tolliver has offered no evidence Mr. Sheppard would be unavailable to testify, as required by Rule 804(a). Nor has he pointed to corroborating circumstances, as required by Rule 804(b)(3)(B).

Even if the statement were admitted for its truth, Mr. Tolliver cannot establish the fifth *Sinclair* requirement: the new evidence is likely to result in acquittal. 109 F.3d at 1531. The fellow inmate says that Mr. Sheppard's alleged confession occurred years ago while the men were using methamphetamine together. The passage of time and the inmate's altered state raise questions about his memory and perception. The inmate's convicted felon status is likely to surface due to the contexts in which he met Mr. Sheppard and Mr. Tolliver, and that could undermine his credibility with the jury. Moreover, the inmate's story is difficult to square with the evidence. It offers a weak alternative theory about one of two fires Mr. Tolliver was convicted of setting. But Mr. Tolliver admittedly tried to profit from both fires by submitting fraudulent insurance claims with falsified leases. Given these circumstances, this new evidence is not likely to result in acquittal.

## V. "Second or Subsequent Conviction" Under § 844(h)

Section 844(h) provides that "[i]n the case of a second or subsequent conviction under this subsection," the defendant "shall be sentenced to imprisonment for 20 years" to run consecutive to "any other term of imprisonment." 18 U.S.C. § 844(h). Accordingly, the district court sentenced Defendant to ten years' imprisonment on the first § 844(h)(1) conviction and a consecutive term of twenty years' imprisonment on the second § 844(h)(1) conviction, each to run consecutively to the sentence for the two § 844(i) convictions. Defendant argues this was in error because his "second" conviction under § 844(h)(1) was contained in the same judgment as his first conviction and he was, therefore, not the type of "recidivist[]" for whom the enhanced punishment was designed. (Appellant's Opening Br. at 42.) We review the legality of Defendant's sentence de novo. *United States v. Price*, 75 F.3d 1440, 1446 (10th Cir. 1996).

The Supreme Court interpreted language essentially identical to § 844(h)'s "second or subsequent conviction" provision when it considered a challenge to the imposition of consecutive enhanced sentences under 18 U.S.C. § 924(c) in *United States v. Deal*, 508 U.S. 129 (1993). The defendant in *Deal* had been convicted, in a single proceeding, of six counts of bank robbery and six counts of carrying and using a firearm during and in relation to a crime of violence, in violation of § 924(c). He was sentenced to five years' imprisonment on the first §

-24-

924(c) count, and to twenty-year consecutive terms on each of the other § 924(c) counts. The Court "granted certiorari on the question whether [the defendant's] second through sixth convictions under § 924(c)(1) in this single proceeding arose in the case of his second or subsequent conviction within the meaning of § 924(c)(1)." *Id.* at 131 (internal quotation marks and brackets omitted). The Court concluded that they did, explaining that the term "conviction" in § 924(c) unambiguously "refers to the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction." *Id.* at 132. "Findings of guilt are necessarily arrived at 'successively in time,' even in a single proceeding . . . so that multiple convictions occurring in the same proceeding can indeed be 'second or subsequent' for purposes of section 924(c)." *United States v. McIntosh*, 999 F.2d 487, 489 (10th Cir. 1993) (quoting *Deal*, 508 U.S. at 133 n.1) (citation omitted). Following the Supreme Court's opinion in *Deal*, we have repeatedly affirmed enhanced consecutive sentences for multiple § 924(c) convictions included in the same indictment. *See, e.g.*, *United States v. Zeigler*, 19 F.3d 486, 494 (10th Cir. 1994); *United States v. Abreu*, 997 F.2d 825, 826 (10th Cir. 1993) (en banc).

Although Defendant acknowledges "the Supreme Court addressed similar 'second or subsequent conviction' language in *Deal*," he argues "the holding in *Deal* is distinguishable from this case" "[b]ecause the purpose and scope of 844(h) as articulated by Congress is intended to address 'career criminals,'

meaning 'those who commit a felony and have been previously convicted."

(Appellant's Opening Br. at 43-44.) However, as with § 924(c), "the language of [§ 844(h)] . . . gives no indication that punishment of those who fail to learn the 'lesson' of prior conviction or of prior punishment is the sole purpose of [the statute], to the exclusion of other penal goals such as taking repeat offenders off the streets for especially long periods, or simply visiting society's retribution upon repeat offenders more severely." *Deal*, 508 U.S. at 136. We therefore see no principled reason to depart from the Supreme Court's holding that the phrase "second or subsequent conviction" applies to convictions for offenses tried in a single proceeding. *Cf. United States v. Cain*, 671 F.3d 271, 278 n.2 (2d Cir. 2012) (relying on *Deal* in explaining that "[b]ecause [the defendant] was convicted on three counts under § 844(h), he faced a minimum of fifty years for these counts alone, to follow a mandatory minimum five-year sentence for a separate arson conviction under 18 U.S.C. § 844(i).").

## VI. Consecutive Sentences

In addition to imposing the statutory mandatory minimum of ten- and twenty-years' imprisonment for Defendant's two § 844(h)(1) convictions, the district court imposed seventy months' imprisonment for each of Defendant's two § 844(i) convictions to run concurrently with one another. The district court ordered the § 844(h)(1) ten- and twenty-year sentences to run consecutive to all

other terms of imprisonment.  Defendant argues this was in error.[4]  Again, we

review the legality of Defendant's sentence de novo.  *Price*, 75 F.3d at 1446.

While less than clear, Defendant appears to argue that his § 844(i)

sentences should run concurrently with his § 844(h)(1) sentences because the

arson counts "under 844(i) cannot be used as the underlying offense to support

mandatory sentencing under 844(h)."  (*See* Appellant's Opening Br. at 45 (citing

*United States v. Konopka*, 409 F.3d 837, 839 (7th Cir. 2005) ("[T]he term 'any

felony' in section 844(h) means any felony other than arson and conspiracy to

---

[4] Although much of the government's response focuses on whether separate sentences for Defendant's § 844(h)(1) and § 844(i) convictions violate the double jeopardy clause, we do not see that Defendant has made any such argument. Rather, he maintains simply that "[t]he consecutive sentences ordered by the district court in this case for the 844(i) counts should be reversed and allowed to run concurrently with [his] 844(h) sentences."  (Appellant's Opening Br. at 46.) We note, however, that several of our sister circuits have affirmed separate sentences for convictions arising out of the same fire under both § 844(i) and § 844(h)(1), with mail fraud as the predicate offense. *See, e.g.*, *United States v. Xiong*, 595 F.3d 697, 698-99 (7th Cir. 2010) (affirming convictions under § 844(h)(1) and (i) arising from defendant's act of burning his mother's supermarket to help her collect insurance money); *United States v. Severns*, 559 F.3d 274, 291 (5th Cir. 2009) ("Because proof of arson and mail fraud would not establish use of fire to commit mail fraud in every case, [the defendant] may be sentenced for arson, mail fraud, and use of fire to commit mail fraud."); *United States v. Zendeli*, 180 F.3d 879, 886 (7th Cir. 1999) ("Separate punishments are justified under the statutes for separate but related crimes.  Convictions have been affirmed in which sentences were imposed under both § 844(h) and § 844(i)." (collecting cases)).  The authority Defendant cites in support of a contrary proposition has limited persuasive value; it consists of a *dubitante*, *Zendeli*, 180 F.3d at 887, and concurring opinion, *United States v. Fiore*, 821 F.2d 127, 133 (2d Cir. 1987), in which the judges questioned the majorities' conclusion that separate punishment under § 844(h)(1) and § 844(i) does not violate the double jeopardy clause—a fact Defendant failed to alert this court to.

commit arson."))).)  We find two fatal flaws in Defendant's argument.  First, unlike in *Konopka*, the predicate offense for Defendant's § 844(h)(1) convictions was not arson, but rather two instances of uncharged mail fraud, in violation of 18 U.S.C. § 1341, stemming from Defendant's submission of fraudulent claims of loss to his insurance providers.  (Appellant's App. at 1808, 1812 (charging Defendant with "knowingly us[ing] fire and explosive materials, to commit mail fraud, a felony prosecutable in a court of the United States . . . in violation of Title 18, United States Code, Section 844(h)(1)").)  Second, the sentencing provision of § 844(h) explicitly mandates that "the term of imprisonment imposed under this subsection [shall not] run concurrently with *any other term of imprisonment* including that imposed for the felony in which the explosive was used or carried."  18 U.S.C. § 844(h) (emphasis added).  As such, the district court could not have ordered Defendant's § 844(i) sentences to run concurrently with his § 844(h)(1) sentences.

## VII.  Violation of the Eighth Amendment

Defendant raises a final challenge to the length of his sentence, arguing that the 430-month sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment.  We review "de novo whether [Defendant's] criminal sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment."  *United States v. Yeley-Davis*, 632 F.3d 673, 682 (10th Cir. 2011).

"The Eighth Amendment contains a narrow proportionality principle that applies to noncapital sentences." *United States v. Gillespie*, 452 F.3d 1183, 1190 (10th Cir. 2006) (internal quotation marks omitted). "Under this narrow principle, the Constitution does not require the crime and the sentence to be strictly proportional." *Id.* Rather, "it forbids only extreme sentences that are grossly disproportionate to the crime." *Id.* (internal quotation marks omitted). As we have previously explained, "the gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Id.* (internal quotation marks and brackets omitted). "Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *Id.*

Given the rare application of the gross disproportionality principle, we conclude Defendant's 430-month sentence must be upheld. To begin, Defendant's sentence is clearly within the statutory limits. A conviction for arson under § 844(i) carries a mandatory minimum of 60 months and a statutory maximum of 240 months. 18 U.S.C. § 844(i). The district court sentenced Defendant to 70 months' imprisonment on each of his two arson convictions—well below the statutory maximum. As for the two counts of using fire to commit mail fraud in violation of § 844(h)(1), a first conviction under this section carries a mandatory sentence of 120 months, and a second or subsequent conviction carries a mandatory sentence of 240 months, which is what Defendant

-29-

received. By statutory mandate, the district court ordered the sentences for Defendant's two § 844(h)(1) convictions to run consecutively to one another as well as the sentence for his two § 844(i) convictions. However, the district court exercised its discretion under 18 U.S.C. § 3584(a) and ordered the 70-month sentences for Defendants two § 844(i) convictions to run concurrently with each other. As a result, Defendant received a sentence that is not only within the statutory limits, but is significantly lower than the statutory maximum sentence of 840 months Defendant could have received. Indeed, Defendant's sentence was only ten months higher than the statutory minimum the court could have imposed.

Nevertheless, Defendant argues his sentence is grossly disproportionate to his crimes because: (1) given his age, it effectively constitutes a life sentence without the possibility of parole; (2) "[h]e is not a recidivist, but instead has had a law-abiding life"; and (3) his "submission of the applications for insurance proceeds from [the] fires, . . . while a serious document-related offense, could in no way be construed . . . as five times mores serious [than the arson itself], thereby justifying a sentence at 360 months that was five times as harsh" as his 70-month sentences for the § 844(i) convictions. (Appellant's Opening Br. at 50.) We find none of these arguments persuasive. We note that this court and the Supreme Court have rejected Eighth Amendment challenges and upheld harsher sentences than the one Defendant received. *See, e.g.*, *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (upholding a sentence of two consecutive terms of twenty-five

years to life for the defendant's "third strike" conviction for petty theft); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (upholding life sentence under Texas's recidivist statute for the defendant's third felony conviction, obtaining $120.75 by false pretenses); *Gillespie*, 452 F.3d at 1190-91 (upholding 468-month sentence for conviction on one count of using a destructive device during a violent crime in violation of 18 U.S.C. § 924(c)(1)(A), one count of arson under 18 U.S.C. § 844(i), and one count of possessing an unregistered destructive device in violation of 26 U.S.C. § 5861(d)); *United States v. Angelos*, 433 F.3d 738, 750-54 (10th Cir. 2006) (upholding sentence of fifty-five years and one day for conviction on three counts under 18 U.S.C. § 924(c)). Nor does Defendant's lack of prior convictions render his lengthy sentence unconstitutional. *See Harmelin v. Michigan*, 501 U.S. 957 (1991) (rejecting an Eighth Amendment challenge to a sentence of life without parole for a first-time felony offender convicted of possessing 672 grams of cocaine). And as for Defendant's argument that his conduct was insufficiently serious to warrant the statutory thirty years under § 844(h), "Congress could with reason conclude that the threat posed to the individual and society of [using fire to commit a felony] and damaging a building used in or affecting interstate commerce is momentous enough to warrant the deterrence and retribution of lengthy and consecutive sentences." *Gillespie*, 452 F.3d at 1191 (internal quotation marks omitted). Accordingly, we conclude that this is not the "extraordinary case" that is shown to violate the Eighth

-31-

Amendment.  *Gillespie*, 452 F.3d at 1191 (citing *Lockyer*, 538 U.S. at 77).

## VIII.  Criminal Forfeiture Money Judgment

Following his conviction, Defendant stipulated to entry of a criminal forfeiture money judgment in the amount of $92,453.11, representing the proceeds obtained in connection with the South Indian fire.[5]  Defendant subsequently tendered two payments totaling $92,453.11 in satisfaction of that judgment.  During Defendant's sentencing hearing, the government indicated the $92,453.11 satisfied only the criminal forfeiture and not the restitution owed to the insurance company.  Defendant objected, stating he believed the criminal forfeiture and restitution were to be one and the same.  In its sentence, the district court ordered Defendant to pay $94,277.51 in restitution to the insurance company despite the already forfeited amount.  Both the restitution and the forfeiture money judgment were incorporated in Defendant's judgment. (Appellant's App. at 2272-73.)  Following entry of the judgment, Defendant filed a motion to compel the government to comply with 21 U.S.C. § 853(n)(1) so that the insurance company could make a claim to the forfeited funds, thereby offsetting Defendant's restitution obligation.  The district court denied Defendant's motion.  Since the filing of this appeal, the full restitution amount of $94,227.51 has been disbursed to the insurance company, satisfying Defendant's

---

[5] Defendant obtained no proceeds from his insurance claim for the 31st Street property, so only the South Indian fire was implicated in the forfeiture.

restitution obligation. (District Ct. Docket, Doc. 312.) The $92,453.11 in forfeited funds continue to be held in abeyance pending resolution of this appeal. (*Id.*)

On appeal, Defendant argues the judgment against him is defective for both substantive and procedural reasons. Substantively, he argues the district court erred in imposing both forfeiture and restitution. Instead, Defendant maintains the $92,453.11 he forfeited should have been credited toward his restitution obligation. Procedurally, Defendant argues the district court erred in refusing to require the government to comply with the provisions of 21 U.S.C. § 853(n). Because Defendant's appeal challenges the district court's interpretation of the federal forfeiture laws, our review is de novo. *United States v. McGinty*, 610 F.3d 1242, 1245 (10th Cir. 2010).

We begin with a premise on which both parties agree: both restitution and forfeiture are mandatory parts of Defendant's sentence. *See* 18 U.S.C. §§ 3663A(a)(1) (requiring restitution), 982(a)(2)(B) (requiring forfeiture for violation of § 844); *McGinty*, 610 F.3d at 1246 ("[C]riminal forfeiture is not a matter within the district court's discretion. Instead, the district court must order forfeiture of any and all proceeds of the offense and any property derived from those proceeds."). Despite this fact, Defendant argues the district court erred in refusing to offset his restitution obligation by the $92,453.11 he forfeited to the government, maintaining that its failure to do so results in Defendant being

required to pay twice. We have previously rejected an identical argument. In *McGinty*, the district court "suggested that ordering restitution and forfeiture in the same amount would be unfair as a double recovery," and therefore equitably reduced the forfeiture amount owed by defendant by the amount he was required to pay in restitution. *McGinty*, 610 F.3d at 1247. We held the district court erred in doing so, explaining that "[b]ecause restitution and forfeiture are distinct remedies, ordering both in the same or similar amounts does not generally amount to a double recovery." *Id.*; *see also United States v. Leahy*, 464 F.3d 773, 793 n.8 (7th Cir. 2006) (explaining that, although "to the untrained eye, this might appear to be a 'double dip,' restitution and forfeiture serve different goals"). We concluded that "both forfeiture and restitution were mandatory," and "[n]othing in the statutory scheme permitted the district court to reduce the mandated criminal forfeiture order because the defendant also had to satisfy his obligation to pay restitution." *McGinty*, 610 F.3d at 1248. The same is true here. Accordingly, we see no error in the district court's refusal to apply the funds Defendant forfeited to satisfy his obligation to pay restitution.

We turn then to Defendant's procedural argument. Defendant maintains the district court erred in failing to require the government to comply with the notice and ancillary proceeding provisions of § 853(n), which are designed to protect third party interests in forfeited property. He argues that had the government been required to do so, the money he forfeited to the government would be made available to the victim insurance company. However, "[t]here is no provision for

third party involvement in the forfeiture determination" when the forfeiture involves only a money judgment, as it did here. *United States v. Zorrilla-Echevarria*, 671 F.3d 1, 6 (1st Cir. 2011). As Rule 32.2 of the Federal Rules of Criminal Procedure—which sets forth the procedure for criminal forfeiture—makes clear, "no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment." Fed. R. Crim. P. 32.2(c)(1). This is because "[a] money judgment is an *in personam* judgment against the defendant and not an order directed at specific assets in which any third party could have any interest." Fed. R. Crim. P. 32.2 advisory committee's notes on the 2000 amendments.

Because here the order of forfeiture involved only an *in personam* money judgment against Defendant, the insurance company would not have been "entitled to invoke the ancillary proceeding provisions of 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2." *Zorrilla-Echevarria*, 671 F.3d at 10. Accordingly, the district court did not err in refusing to require the government to comply with the procedures regarding such proceedings.

## CONCLUSION

For the foregoing reasons, Defendant's conviction and sentence are **AFFIRMED**.

-35-