**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 4, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

LUPE B. ZENDEJAS,

    Defendant-Appellant.

No. 12-4011

(D.C. No. 2:11-CR-00438-DAK-1)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY** and **BALDOCK**, Circuit Judges, and **JOHNSON**,[**] District Judge.[***]

A jury convicted Defendant Lupe Zendejas of embezzling $20,000 from a federally insured bank in violation of 18 U.S.C. § 656. The district court sentenced Defendant to 36 months of supervised release and ordered her to repay the bank. On appeal, Defendant argues the prosecution made comments to the jury during its

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] Honorable William P. Johnson, United States District Judge, District of New Mexico, sitting by designation.

[***] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

closing rebuttal that deprived her of a fair trial in violation of the Fifth and Sixth Amendments. We exercise jurisdiction under 28 U.S.C. § 1291. Because Defendant did not contemporaneously object to the prosecution's comments, but instead waited until after trial to object, we review for plain error only. United States v. Hernandez-Muniz, 170 F.3d 1007, 1011 (10th Cir. 1999) (reviewing for plain error a claim of prosecutorial misconduct based on improper remarks to the jury where defendant did not contemporaneously object). Applying this standard, we affirm.

I.

The record reveals Defendant, a teller at a Key Bank branch in Taylorsville, Utah, and Tina Garibay, branch manager, prepared a $90,000 cash transfer for pick up by Loomis Fargo, the bank's courier service. Defendant and Garibay counted the money and placed it into bundles or "straps" of $20 and $100 bills. They placed the money, $70,000 in $20 bills and $20,000 in $100 bills, in a clear plastic bag and sealed it. Each of them then "bundle counted" the money by looking into the bag and verifying that all the straps of money were inside. Defendant and Garibay signed both the bag and the bank's consignment log to certify the bag contained $90,000. The consignment log read "sealed packages said to contain" $90,000. Supp. ROA vol. 2, Gov't Exh. 2. Defendant next locked the bag in her teller drawer in the back room of the vault. The vault security camera indicated Defendant was the only person who entered the back room of the vault once the bag containing the cash was ready for pick up. We need not detail the facts surrounding Defendant's

2

three visits to the vault after she and Garibay prepared the cash for transfer. Suffice to say Defendant had exclusive access to the bag containing the $90,000 until she handed it to Kenneth McGhie, the assigned courier, around 25 minutes later.

McGhie had worked for Loomis picking up and delivering cash transfers for 30 years. McGhie testified he examined the bag to make sure it did not appear compromised. He then signed the consignment log as "custodian" of the bag, attesting the bag was "said to contain" $90,000. Id. On cross-examination, defense counsel asked McGhie: "[I]s it fair to say that when you sign that log, you're signing and attesting that the bag you're being given fits the characteristics of . . . those descriptions . . . on the line that you sign on?" ROA vol. 3, at 285. McGhie answered "[y]es." Id. McGhie transported the bag to Loomis where he delivered it to receiving clerk or vault custodian Kierra Maughan. Maughan, like McGhie, checked the bag to make sure it had not been compromised. Maughan logged the information on the bag into the computer and assigned the bag to Loomis teller Amy Tovar. When Tovar opened the bag the next day after checking to make sure the bag did not contain any holes or tears, she found two $10,000 straps of $100 bills missing from its reported contents.

Christine Rose, an investigator for Key Bank, testified she inspected the bag missing the $20,000. The bag itself, numbered 1247987, was not compromised. But Rose questioned the signatures on the bag. During the investigation, Defendant indicated her signature appearing on the bag was authentic. Garibay testified at trial

that her signature on the bag was forged. The prosecution published examples of Garibay's signature so the jury could compare her real signature with the signature on the bag. Bag number 1247987 was listed on the consignment log as the bag Defendant handed McGhie. The log also recorded other cash transfers from the bank to Loomis. The log showed all bags in the same series as bag number 1247987 —excepting bag number 1247981—namely bag numbers ending in 980, 982, 983, 984, 985, 986, 988, and 989, were also used for cash transfers. The inference was Defendant and Garibay placed the entire $90,000 in bag number 1247981. Then, after Defendant had stolen $20,000 from that bag, she placed the remaining $70,000 in bag number 1247987 and altered the bag number appearing on the consignment log to read 1247987 rather than 1247981. In fact, the security camera showed that during one of Defendant's visits to the vault during the relevant time period she wrote something on the consignment log. The "tear off receipt" for bag number 1247987 was located in Defendant's teller drawer.

In its closing argument, the prosecution argued only Defendant could have stolen the money given her exclusive access to the bag during the relevant time period. The prosecution emphasized Defendant was familiar with the cash transfer process, knew how to steal the money, and had the opportunity to do so. Defense counsel responded in his closing by suggesting McGhie's had stolen the money: "[H]e makes sure everything is in the bag." ROA vol. 3, at 417. "[H]e looked at the bag, he saw the denominations, the 20s and 100s." Id. "Ken McGhie counted that

4

money in the bag. And then he left with the $90,000 in the bag." Id. at 418. "Ken McGhie counted the money, and then he left." Id. "Remember Kenneth McGhie already counted the money. The money is not missing from the bank." Id. at 431. "[H]e has in his truck a bag that he strap[] counted which contained $90,000." Id. at 432–33. "Kenneth McGhie took the $90,000 from the bank that day." Id. at 456. "Kenneth McGhie took the money." Id.

In rebuttal, the prosecution reminded the jury that McGhie did not testify he counted the money in the bag. Rather, McGhie testified he spot checked the bag for evidence of tampering and verified that the bag was "said to contain" $90,000. "Kenneth McGhie didn't say he picked up the bag and bundle counted [the money]. The only evidence you have of anyone bundle counting this money is from the defendant and Tina Garibay who said they bundle counted and the 100s were in there." Id. at 460. The prosecution told the jury:

> If you are much of a history buff, you'll be familiar with the military tactic of a diversion. This tactic is used by an enemy army to distract attention away from the real focal point of a battle to confuse what's really going on, to disarm, distract, lose site of what you know.
>
> And the defense's arguments are similar. And [defense counsel], who is an extremely skilled attorney and colleague of mine, would love nothing more than for you to lose site of what you know.

Id. at 459–60. After telling the jury that defense counsel's efforts to place the blame on McGhie rather than Tina Garibay was a "diversion" and an attempt to "fool[] the government," id. at 461, the prosecution also told the jury:

5

> "[D]efense [counsel] . . . knows that his client is guilty unless you believe this is actually Tina Garibay's signature [on the bag]. The only evidence you have is it is not. And I invite you to look at all of the examples we have. Tina Garibay has a unique signature. It's wavy. It's big. It's loopy."

Id. at 465.

Two weeks after the jury returned its verdict, Defendant filed a motion for a new trial pursuant to Fed. R. Crim. P. 33. Therein, Defendant argued for the first time that the prosecution's rebuttal comments improperly placed defense counsel's credibility at issue and suggested counsel was deceptive, unethical, and satisfied of his client's guilt. The district court denied the motion in a written order, stating:

> The court finds that the comments made by the prosecutor during closing argument were not improper. Even if they could be considered improper, however, Defendant is not entitled to a new trial because the statements were singular and isolated in nature and were simply not flagrant enough to influence the jury to convict on grounds other than the evidence presented at trial.

ROA vol. 1, at 122.

II.

In United States v. Young, 470 U.S. 1, 16 n.13 (1985), the Supreme Court told us that a "defendant cannot as a rule remain silent, interpose no objection, and after a verdict has been returned seize for the first time on the point that the prosecutor's comments to the jury were improper and prejudicial." (internal brackets omitted) (quoting United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 238–39 (1940)); see also United States v. Sanchez-Garcia, 150 F. App'x 909, 916–18 (10th Cir. 2005) (unpublished). This is precisely what Defendant did in this case. To preserve what

6

she belatedly claimed to be error, Defendant needed to object at the close of the prosecution's argument, preferably "with a request that the court give a timely warning and curative instruction to the jury." Young, 470 U.S. at 13. Because Defendant failed to do so, plain error is the appropriate standard of review.

Plain error as recognized by Fed. R. Crim. P. 52(b) requires an obvious error that affected a defendant's substantial rights. In other words, a reasonable probability must exist that but for the error the result of the proceeding would have been different. United States v. Orr, 692 F.3d 1079, 1088 (10th Cir. 2012). Plain error further requires the error seriously affect the fairness, integrity, or public reputation of judicial proceedings such that the failure to rectify the error would produce a miscarriage of justice. Id. In Young, the Supreme Court stated "the plain-error exception to the contemporaneous-objection rule is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." Young, 470 U.S. at 15 (internal quotations omitted). In determining whether plain error occurred here, we evaluate the prosecution's comments not in isolation but in the context of the entire record. Id. at 16. Viewed in that context, those comments, even *if* inappropriate, "were not such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." Id.

The prosecution began its rebuttal argument by responding to defense counsel's suggestion that Kenneth McGhie stole the money because he strap counted the money in the bag and left the bank with $90,000. But McGhie had not testified

7

he strap counted the money. Moreover, any inference that he had taken the money, based on his testimony and the testimony of other Loomis employees who inspected the bag and found it unremarkable, was dubious at best. See United States v. Lopez-Medina, 596 F.3d 716, 740 (10th Cir. 2010) (recognizing counsel must confine closing argument to evidence in the record and reasonable inferences from that evidence). The prosecution responded by referring to defense counsel's attempt to blame McGhie as a "diversion" much like the "military tactic" of an "enemy army" in "battle." See Young, 470 U.S. at 12–13 (recognizing that "if the prosecutor's remarks were 'invited' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant revers[al]"). Under the circumstances presented, the prosecution was entitled to tell the jury that defense counsel's statements blaming McGhie for the crime were an attempt to divert their attention from the evidence. See United States v. Catlett, 97 F.3d 565, 572 (D.C. Cir. 1996) ("[T]he prosecutor was within his rights to suggest to the jury that the arguments raised in defense counsel's summation were merely diversions.").

But analogizing the defense to an "enemy army" engaged in "battle," and suggesting defense counsel was trying to mislead the jurors by telling them counsel "would love nothing more than for you to lose site of what you know" may have been improper. See Arrieta-Agressot v. United States, 3 F.3d 525, 527–30 (1st Cir. 1993) (reversing defendants' conviction where the evidence of guilt was not overwhelming and "[t]hroughout his closing argument the prosecutor urged the jury

8

to view this case as a battle in the war against drugs, and the defendants as enemy soldiers"); Pierson v. O'Leary, 959 F.2d 1385, 1388 (7th Cir. 1992) (recognizing an attack on defense counsel's credibility as improper), abrogated on other grounds Cabrera v. Hinsley, 324 F.3d 527, 531 (7th Cir. 2003). The comment asserting defense counsel knew his client was guilty unless Garibay's signature on the bag was authentic also was probably improper. See Young, 470 U.S. at 7 (recognizing prosecutors "breach their duty to refrain from overzealous conduct by commenting on the defendant's guilt").

Nonetheless, the prosecution's comments do not amount to plain error under the facts of this case. Assuming those comments constitute error that is obvious, they neither affected Defendant's substantial rights nor caused a miscarriage of justice. First, while the evidence of Defendant's guilt is purely circumstantial and perhaps "not overwhelming, it is sufficient to eliminate 'any lingering doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations.'" United States v. Fakhoury, 819 F.2d 1415, 1423 (7th Cir. 1987) (quoting Young, 470 U.S. at 19). Second, the district court instructed the jury both at the outset of the trial and after the evidence had been presented that the arguments of counsel were not evidence and jurors were to base their verdict on the evidence alone. See United States v. Oberle, 136 F.3d 1414, 1421 (10th Cir. 1998) (considering curative instructions in determining whether prosecutorial misconduct deprived defendant of a fair trial). Third, we are satisfied the jury largely perceived the prosecution's rebuttal remarks

9

as commentary on the implausibility of defense counsel's closing argument. <u>See</u> <u>Young</u>, 470 U.S. at 17–18 (recognizing any harm from the prosecutor's statement that he believed defendant committed fraud was mitigated by the fact the prosecutor was countering defense counsel's argument that the evidence did not establish fraud).

Because Defendant received a fair albeit not a perfect trial, the district court's judgment is AFFIRMED.

Entered for the Court


Bobby R. Baldock
United States Circuit Judge