**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 19, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DOUGLAS R. MADSEN,

    Defendant - Appellant.

No. 13-4127
(D.C. No. 2:09-CR-00808-CW-1)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

Defendant-Appellant Douglas R. Madsen ("Dr. Madsen") was convicted by federal jury of one count of attempted tax evasion. After the jury had returned its verdict, but before the district court accepted that verdict, the court requested additional briefing. At this juncture, for the first time, Dr. Madsen raised several challenges related, among other things, to the statute of limitations, to purported flaws in the indictment, and to the jury instructions and the verdict form. After

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

fourteen months of extensive briefing and multiple post-trial hearings, the district court ruled against Dr. Madsen and accepted the jury's verdict.

On appeal, Dr. Madsen reasserts his challenges, seeking reversal of his conviction and arguing specifically: (1) that the statute of limitations barred prosecution for his evasion of taxes in tax year 1995; (2) that the indictment was duplicitous because it charged him with evading payment of taxes owed for multiple years in a single count; and (3) that the jury instructions and verdict form improperly allowed the jury to convict him without unanimity. Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm**.[1]

## I

Dr. Madsen is a retired chiropractor who operated his own clinic in Ephraim, Utah. He also owns several parcels of land in Sanpete County, Utah. Since 1995, Dr. Madsen has repeatedly failed to pay his taxes, leading to the instant prosecution.

## A

Dr. Madsen's problems with the Internal Revenue Service ("IRS" or "Service") began in 1995. After the IRS audited the joint federal income tax returns filed by Dr. Madsen and his wife for tax years 1994 and 1995, the Service determined that the couple owed additional taxes and penalties. Dr. Madsen challenged this determination in the United States Tax Court, arguing that "there

---

[1] Judge Hartz joins this order and judgment, *except for* footnote 10.

2

is no such organization within the United States Treasury that constitutes the Internal Revenue Service." Supp. R., Vol. II, Selected Trial Exs., at 82. The Tax Court upheld the IRS's deficiency determination, concluding that Dr. Madsen was "purely and simply [a] classic tax protestor[]." *Id.* Dr. Madsen subsequently failed to file a timely tax return in 1999, and he failed to file tax returns at all for tax years 2000 to 2004. As of 2006, the IRS determined that Dr. Madsen owed a total of $884,791 in taxes, penalties, and interest.[2]

Dr. Madsen also engaged in various efforts to thwart the IRS's attempts to collect the taxes he owed. In October 1994, he created trusts into which he transferred the real property he held. The trustees of these trusts had little independent decision-making power; they merely transferred property to and from the trusts at Dr. Madsen's direction, and Dr. Madsen and his wife continued to live at one of the properties and receive income from another.

In June 2003, Dr. Madsen created a new entity, Grand Scale, Inc. ("Grand Scale"). After the IRS filed a federal tax lien against him and his wife in order to collect the outstanding taxes, he transferred most of the land held by the trusts to Grand Scale between September and November 2003. Dr. Madsen attempted to create the appearance that there was no equity in these properties by signing and recording fictitious mortgages for amounts greater than the appraised market

---

[2] At the time of trial, Dr. Madsen owed $1,292,078 in assessed taxes, penalties, and interest.

3

values of the properties. Later, in 2006, he also filed a false Uniform Commercial Code ("UCC") financing statement identifying "Willow Valley Trust"—an entity for which neither the IRS nor the Utah Department of Commerce had any records—as a secured creditor of the property held by Grand Scale.

In 2004, after Dr. Madsen sold his chiropractic clinic to Dr. Charles Howard, the IRS sent a notice of levy to Dr. Howard, directing him to pay the money he owed Dr. Madsen under the sales contract to the IRS instead. Dr. Madsen attempted to convince Dr. Howard not to honor the levy in 2005 by sending him a letter claiming that the IRS had no lawful authority for the levy. After Dr. Howard indicated that he nevertheless would pay the IRS, Dr. Madsen "made a second attempt to stop Dr. Howard . . . , utilizing a false UCC financing statement that [he had] filed." Aplee. Br. at 11. Specifically, Dr. Madsen "showed" that statement to Dr. Howard; it ostensibly indicated that Willow Valley Trust had a senior security interest in the sales contract—that is, Willow Valley Trust supposedly had filed a lien "against [the] contract." Supp. R., Vol. I, Ex. 5-2, at 1 (Letter, dated Dec. 31, 2006).

The IRS also served summonses on Dr. Madsen in May 2005, requiring him to provide information regarding his assets and liabilities. Dr. Madsen met with the IRS in July 2006, but he provided various false and misleading responses to the Service's questions. He repeated these statements before the district court in January 2007 and was subsequently held in contempt.

4

**B**

On October 22, 2009, a federal grand jury returned a one-count indictment against Dr. Madsen for attempting to evade the payment of taxes in violation of 26 U.S.C. § 7201. Section 7201 states that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony . . . ." *Id.* The statute of limitations for prosecuting violations of § 7201 is six years. *See id.* § 6531(2).

The indictment alleged that between 2003 and 2008, Dr. Madsen engaged in several affirmative acts of evasion to avoid payment of almost $1.3 million in taxes, interest, and penalties owed for tax years 1995 and 1999–2004.[3] During a four-day jury trial, Dr. Madsen represented himself, with standby counsel. Before the jury retired to consider its verdict, the court instructed it as to the elements of a conviction under § 7201, the six-year statute of limitations, and the requirement

---

[3]    The indictment specifically identified the following acts: (1) transferring property to Grand Scale; (2) filing fake mortgages on the properties transferred to Grand Scale; (3) attempting to convince Dr. Howard not to pay the IRS; (4) falsely representing to Dr. Howard that Willow Valley Trust had a superior lien on the contract for the sale of Dr. Madsen's clinic; (5) recording a UCC financing statement indicating that Willow Valley Trust had a security interest in the sales contract; (6) recording a UCC financing statement asserting that Willow Valley Trust had a security interest in the properties held by Grand Scale; (7) providing false, incomplete, and inaccurate information in response to the IRS's attempts to enforce the summonses; and (8) providing false information in his signed IRS Form 433-A ("Collection Information Statement for Wage Earners and Self-Employed Individuals").

5

that its decision be unanimous. The government proposed a general verdict form, to which Dr. Madsen concedes he did not object. The jury returned a general verdict stating that it unanimously found Dr. Madsen guilty of attempted tax evasion as charged in Count One of the Second Superseding Indictment.

After the jury returned its verdict, but before the district court accepted that verdict, the court *sua sponte* directed the parties to submit additional briefing on several questions pursuant to its "responsibility under [Federal] Rule [of Criminal Procedure] 29 to satisfy itself that there [wa]s sufficient evidence presented to sustain a conviction." R., Vol. XII, at 35 (Tr. of Jury Verdict, dated Jan. 12, 2012).

Dr. Madsen responded to this briefing order in February 2012 by filing a pro se memorandum, arguing for the first time, *inter alia*, that the criminal prosecution based on his evasion of the taxes owed for tax year 1995 was barred by the statute of limitations. He further argued that if the charge relating to tax year 1995 were barred by the statute of limitations, then it would be impossible to tell whether the jury unanimously reached a verdict based on this time-barred year or on the other charged, but unchallenged, tax years "because the Second Superseding Indictment is duplicitous." *Id.*, Vol. II, at 102 (Def.'s Resp. to Request for Briefing, filed Feb. 9, 2012). The potential lack of unanimity, he claimed, rendered the jury verdict "suspect and insupportable." *Id.*

6

During an April 2012 oral argument, Dr. Madsen moved to arrest judgment under Rule 34 of the Federal Rules of Criminal Procedure, arguing that the six-year statute of limitations for tax evasion was a jurisdictional bar to prosecution or conviction for taxes owed in tax year 1995.[4] He subsequently filed a motion for judgment of acquittal and a motion for a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33, respectively. In these motions, Dr. Madsen sought to incorporate the arguments previously made in his February 2012 memorandum. The government objected to all of these motions as untimely and on the merits.

In an order dated March 26, 2013, the district court considered the timeliness of Dr. Madsen's motions. It found that Dr. Madsen's briefing that "respond[ed] to the court's specific questions," R. Vol. II, at 315 (Mem. Decision & Order Entering Verdict, filed Mar. 26, 2013), including the February 2012 memorandum, "functionally served as motions under Rules 29 and 33," *id.* at 316. Although the motions were unquestionably untimely when so construed, the

---

[4] Rule 34 provides as follows:

> (a) In General. Upon the defendant's motion or on its own, the court must arrest judgment if the court does not have jurisdiction of the charged offense.
> (b) Time to File. The defendant must move to arrest judgment within 14 days *after the court accepts a verdict or finding of guilty*, or after a plea of guilty or nolo contendere.

Fed. R. Crim. P. 34 (emphasis added).

7

district court nevertheless concluded that they should be considered on the merits because, pursuant to Federal Rule of Criminal Procedure 45(b)(1)(B), their tardy filing "might just be the most straightforward instance of 'excusable neglect' possible because, in fact, the court created this procedural abnormality," *id.* at 315, by making an "extraordinary request for briefing before accepting the jury's verdict," *id.* at 316. The court deemed the Rule 34 motion timely because the court had not even accepted the jury's verdict at that time. *See* Fed. R. Crim. P. 34 (ordinarily contemplating that a motion will be filed, *inter alia*, "*after* the court accepts a verdict or finding of guilty" (emphasis added)).

However, after considering Dr. Madsen's motions, the court denied all three. It found that the statute of limitations did not bar prosecution for taxes owed in tax year 1995, that the indictment was not duplicitous, and that the jury had been properly instructed as to unanimity. The court thus accepted the jury's verdict, entered judgment, and sentenced Dr. Madsen.

## II

Dr. Madsen raises three contentions on appeal: (1) the six-year statute of limitations bars prosecution for taxes owed in tax year 1995 because there were no subsequent affirmative acts of alleged evasion until 2003; (2) the indictment was impermissibly duplicitous because it charged him for evasion over multiple years in a single count; and (3) the jury instructions and verdict form were deficient in that they did not require the jury to find that each element of tax

8

evasion was satisfied for every year included in the indictment. Given the unusual procedural posture of this case—*viz.*, the three issues before us were first raised after the jury had reached a verdict, but before the judge accepted that verdict—we first address the threshold question of whether each of the issues has been properly preserved for appeal.

We conclude that, irrespective of the fact that the parties extensively briefed the three issues in the district court and the court ruled on them, Dr. Madsen did not properly preserve the issues for appellate review. This is so because Dr. Madsen's presentation of the issues was untimely for preservation purposes—specifically, he failed to present the issues to the district court during a period when the court could have acted to *avoid* the ostensible errors; instead, he advanced the issues to the court at a point in the proceedings when it could only attempt to rectify any errors that already had taken place.

The question then arises whether Dr. Madsen has waived the issues, as the government contends. We conclude that he has, and because "a party that has *waived* a right is not entitled to appellate relief," *United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006), we uphold the district court's judgment.

**A**

Dr. Madsen argues that we should reach the merits of his three issues because, "in the present case, the parties extensively briefed, and the district court carefully examined," these issues. Aplt. Opening Br. at 21. It is true that the

9

district court had ample opportunity to rule on the claims with the benefit of two post-trial hearings and numerous briefs that the parties filed. However, simply raising an issue before the district court is not necessarily sufficient, standing alone, to preserve a claim; a party must also "make the *timely* assertion of a right." *United States v. Wardell*, 591 F.3d 1279, 1310 (10th Cir. 2009) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (internal quotation marks omitted). An objection is timely if it is raised "while the district court still has an opportunity to fix [the alleged error]." *United States v. Banks*, 761 F.3d 1163, 1186 (10th Cir.), *cert. denied*, --- U.S. ----, 135 S. Ct. 308 (2014).

Put another way, preservation generally requires that the district court be able to *avoid* the error at the time the objection is raised, rather than to merely provide a remedy for any prejudicial effects of the error. *See United States v. Walsh*, 75 F.3d 1, 6 (1st Cir. 1996) ("[T]he usual rule is that an objection must be made known at the time that the court is making its decision to act . . . ."); *accord Cornhusker Cas. Co. v. Skaj*, --- F.3d ----, 2015 WL 2348628, at *20 (10th Cir. 2015). As the Supreme Court has instructed, a "defendant cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on" an argument that conduct at trial was prejudicial or improper. *United States v. [Billy] Young*, 470 U.S. 1, 16 n.13 (1985) (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 238–39 (1940)) (internal quotation marks omitted); *see also Donley v. Christopher*, 320 F.2d 24, 26 (10th Cir. 1963)

10

("Having failed to object to the records at the time of their production and tender, the contention [regarding their lack of authenticity] at this belated juncture comes too late.").

Here, the district court had no opportunity to avoid any ostensible errors that Dr. Madsen identified in his post-trial briefing. It could only remedy any such errors that actually did occur by, for example, declining to accept the jury's verdict or ordering a new trial. Indeed, we have previously concluded that the errors alleged in this case—relating to an ostensible time bar under the statute of limitations, duplicity in the indictment, and flaws in the jury instructions or verdict form—are precisely the kinds of issues that must be raised during or even before trial to give the trial court the opportunity to prevent the error. *See, e.g.*, *United States v. Trammell*, 133 F.3d 1343, 1354 (10th Cir. 1998) ("[A] challenge to an indictment based on duplicity must be raised prior to trial. . . . Raising the objection at the close of the government's case is too late." (omission in original) (internal quotation marks omitted)); *United States v. Freeman*, 813 F.2d 303, 305 (10th Cir. 1987) (holding that the failure to object to an alleged error in the jury instructions before the jury retired resulted in a lack of preservation); *United States v. Gallup*, 812 F.2d 1271, 1280 (10th Cir. 1987) (concluding that the defendant failed to preserve his statute of limitations defense when he failed to raise it during trial or "request an instruction on the statute of limitations").

11

The fact that Dr. Madsen raised his three appellate issues in post-trial motions that are specifically authorized by the Federal Rules of Criminal Procedure—that is, motions for acquittal (Rule 29), for a new trial (Rule 33), and to arrest judgment (Rule 34)—does not alter our conclusion regarding the lack of preservation. The focus of the preservation inquiry is on when the issue could have been raised to avoid error, not on the procedural means by which the issue ultimately is raised. Where a litigant has the ability to alert the trial court to possible errors in time for the court to change course and rectify them and the litigant fails to do so, irrespective of the procedural vehicle by which the litigant ultimately presents the purported error, ordinarily we will conclude that the alleged error has not been preserved.[5] *See, e.g.*, *United States v. Toro-Pelaez*, 107 F.3d 819, 828 (10th Cir. 1997) (reviewing denial of the defendant's motion for a new trial on the grounds of alleged prosecutorial misconduct for plain error where the defendant failed to contemporaneously object at trial); *United States v. Hill*, 60 F.3d 672, 675 (10th Cir. 1995) (noting that objecting to testimony in a motion

---

[5] In contrast, where a litigant could not have raised an issue at trial—for example, where there is newly discovered or suppressed evidence—the litigant may still preserve the claim by bringing it to the court's attention for the first time in a post-trial motion. *See, e.g.*, *United States v. Battles*, 745 F.3d 436, 446–47 (10th Cir.) (finding that a claim was not forfeited where the appellant only discovered the information presented in her Rule 33 motion after the trial had concluded), *cert. denied*, --- U.S. ----, 135 S. Ct. 355 (2014); *United States v. Torres*, 569 F.3d 1277, 1283–84 (10th Cir. 2009) (reversing the district court's denial of a motion for a new trial where the government suppressed impeachment evidence regarding its key witness).

for acquittal or new trial "does not make up for the failure to object when the evidence was proffered at trial"); *see also Castrignano v. E.R. Squibb & Sons, Inc.*, 900 F.2d 455, 461 (1st Cir. 1990) ("We will not order a new trial on the basis of an alleged error that the district court may have been willing and able to correct had he been aware of the basis for counsel's objection." (internal quotation marks omitted)).[6]  Thus, our cases dealing with issues that are raised for the first time in post-trial motions specifically recognized by the Federal Rules of Criminal Procedure reinforce the general principle that preservation of an issue for appeal depends on whether the party claiming the error alerted the trial court to the problem at a stage at which the court could have avoided the error.

In sum, Dr. Madsen had the opportunity to challenge the timeliness of his prosecution for the 1995 tax year, the alleged duplicity of the indictment, and the lack of an appropriate jury instruction and verdict form well before the jury retired to consider its verdict.  Had he raised these issues prior to that critical point—when the court could have, for example, stopped the allegedly time-barred charge from going to the jury or issued an appropriate jury instruction or a special verdict form—then the court could have conceivably prevented the occurrence of the errors Dr. Madsen now claims justify reversal and a new trial.  By failing to

---

[6]    A panel of our court has reached a similar conclusion in a persuasive unpublished decision.  *See United States v. Zendejas*, 509 F. App'x 735, 738 (10th Cir. 2013) (finding that a motion for a new trial based on prejudicial comments by a prosecutor did not preserve error because the defendant should have objected during the trial and requested a warning or curative instruction).

timely alert the district court to these issues, Dr. Madsen failed to preserve his claims for appellate review.

**B**

The government urges that Dr. Madsen waived all three of his claims by failing to raise them until after trial. We agree.[7]

Waiver involves the "intentional relinquishment or abandonment of a known right." *Olano*, 507 U.S. at 733 (internal quotation marks omitted); *accord United States v. McGehee*, 672 F.3d 860, 873 (10th Cir. 2012); *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007). "We typically find waiver in cases where a party has invited the error that it now seeks to challenge, or where a party attempts to reassert an argument that it previously raised and

---

[7]    We recognize that the decision of "what questions may be taken up and resolved . . . is one left primarily to the discretion of the courts of appeals." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976). However, we see no strong reason, much less a compelling one, for exercising our discretion here to ignore Dr. Madsen's waivers. Therefore, under the circumstances present here, we elect to enforce the waiver rule, even though the district court did ultimately reach the merits of each of Dr. Madsen's claims. *See United States v. Bryant*, 5 F.3d 474, 476 (10th Cir. 1993) (stating, with respect to an objection enumerated in Federal Rule of Criminal Procedure 12(b)(3), that "[t]he fact that the district court did not reject Defendant's argument as waived, but instead addressed whether Defendant had adequately presented a selective prosecution claim, does not preclude us from finding waiver due to untimeliness and failure to show cause"); *see also United States v. Bashroun*, 225 F.3d 9, 14 (1st Cir. 2000) ("[W]e enforce Rule 12[(e)] waivers even though the district court ultimately did address the waived issue on the merits . . . ."); *United States v. Ulloa*, 882 F.2d 41, 43 (2d Cir. 1989) ("[A] motion to suppress evidence must be made before trial and . . . failure to make such a motion constitutes waiver, even where, as here, the trial judge considers the issue during trial." (citations omitted)).

14

abandoned below." *United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008). Ordinarily, "a party that has *waived* a right is not entitled to appellate relief." *Teague*, 443 F.3d at 1314; *see also United States v. Aptt*, 354 F.3d 1269, 1281 (10th Cir. 2004) ("[T]here is no appeal from violation of a waived right . . . ."). We proceed to demonstrate that each of Dr. Madsen's three claims is waived.

## 1

Dr. Madsen argues that his statute of limitations claim is not waived because the statute of limitations is a "jurisdictional requirement requiring an express waiver" and "can be raised at any time, even after the defendant has pleaded guilty." Aplt. Opening Br. at 21. He draws support for this proposition from our decision in *United States v. Waters*, 328 F.2d 739 (10th Cir. 1964).

While *Waters* did state that raising the statute of limitations for the first time on appeal would not necessarily waive a claim because it was a "jurisdictional limitation upon the power to prosecute and punish," 328 F.3d at 743, we have since clarified that *Waters* was focused on whether the statute of limitations "operates as a bar to prosecution," *United States v. Cooper*, 956 F.2d 960, 962 (10th Cir. 1992). Indeed, we have said that "[t]he [*Waters*] court did not equate the statute with the concept of subject matter jurisdiction, and we do not believe such a parallel exists." *Id.*

15

Today, it is well-established that—for purposes of appellate review—the statute of limitations is "an affirmative defense that can be waived if it is not asserted at trial." *United States v. Flood*, 635 F.3d 1255, 1260 (10th Cir. 2011); *see United States v. Brody*, 705 F.3d 1277, 1284 (10th Cir. 2013) ("[A] claim that a criminal charge is time-barred by a statute of limitations is an affirmative defense: successfully raising this defense does not deprive a district court of subject matter jurisdiction, and the claim can be waived."); *accord United States v. Tolliver*, 730 F.3d 1216, 1225 (10th Cir. 2013), *cert. denied*, --- U.S. ----, 134 S. Ct. 1912 (2014).[8]

We thus determine that Dr. Madsen waived his statute of limitations defense by failing to raise it at trial.

**2**

With respect to Dr. Madsen's duplicity claim, the law is also fairly unequivocal: a party who fails to raise objections to an indictment before trial waives any such objection. *See* Fed. R. Crim. P. 12(b)(3)(B) (stating that motions alleging a defect in the indictment must be brought before trial); *id.* R. 12(e)[9]

---

[8] Because the statute of limitations is *not* jurisdictional, we also reject Dr. Madsen's argument that "the district court erred in denying [his] Rule 34 motion because the statute of limitations is jurisdictional." Aplt. Opening Br. at 32 (capitalization altered).

[9] After Dr. Madsen's trial—indeed, after this panel heard oral argument—amendments to Rule 12 took effect as part of 2014 revisions of the Federal Rules of Criminal Procedure. These amendments resulted in the

(continued...)

16

(stating that a party waives any Rule 12(b)(3) defense or objection not timely raised); *see also United States v. Schneider*, 594 F.3d 1219, 1228 n.9 (10th Cir. 2010) (stating that an untimely challenge to the duplicity of an indictment was waived); *United States v. Henry*, 504 F.2d 1335, 1338 (10th Cir. 1974) ("The proper way to attack a duplicitous indictment is by a motion to elect. . . . [T]his is a motion which must be made prior to trial or it is waived." (citations omitted)). *But cf.* 3A Charles Alan Wright & Sarah N. Welling, *Federal Practice and Procedure* § 689, at 236 (4th ed. 2010) ("[I]f the district court entertains the belated motion [to suppress evidence] and decides it on the merits, it cannot be argued on appeal that it has been waived.").

Dr. Madsen concedes that his challenge to the indictment was untimely, but he seeks relief under the narrow exception in Rule 12(e) of the Federal Rules of

---

[9](...continued)
repositioning of certain sections of Rule 12 within the rule and also language changes. *See* Fed. R. Crim. P. 12 advisory committee note (2014) ("The effect of failure to raise issues by a pretrial motion has been relocated from (e) to (c)(3)."); *id.* ("New paragraph (c)(3) governs the review of untimely claims, previously addressed in Rule 12(e). . . . [T]he party seeking relief [must] show 'good cause' for failure to raise a claim by the deadline."). However, because the district court relied on the version of Rule 12 in effect before the 2014 amendment, and because the parties do not refer to, and have not asked us to apply, the 2014 amended version, we apply Rule 12 as it existed at the time of Dr. Madsen's trial (i.e., 2012). *See Cardenas v. Thaler*, 651 F.3d 442, 444 (5th Cir. 2011) (applying the version of the Federal Rules of Appellate Procedure in effect "[a]t the time th[e] case was heard and decided in the district court" because "the parties and the district court did not have the benefit of the . . . amendments" and "the parties ha[d] not briefed whether the . . . amendments affect[ed]" the court's analysis).

17

Criminal Procedure for belated challenges to an indictment where a party shows "good cause."  Fed. R. Crim. P. 12(e); *see Trammell*, 133 F.3d at 1354 (noting that in limited circumstances, "a defendant can raise a late challenge to a duplicitous indictment if cause is shown that might justify the granting of relief from the waiver" (internal quotation marks omitted)).  "We rarely, however, grant relief under the good-cause exception," *United States v. Burke*, 633 F.3d 984, 988 (10th Cir. 2011), and Dr. Madsen has not demonstrated that he is entitled to such relief.

Specifically, the only cause that Dr. Madsen advances to justify his late challenge is his "lack of legal experience and pro se status."  Aplt. Opening Br. at 38.[10]  We have long held that although we construe the filings of pro se litigants liberally—attempting to "discern the kernel of the issues" raised in otherwise "illogically presented and intellectually unfocused" filings, *de Silva v. Pitts*, 481 F.3d 1279, 1283 n.4 (10th Cir. 2007)—this "generous construction . . . has limits, and we must avoid becoming the plaintiff's advocate," *Firstenberg v. City of*

[10]    Dr. Madsen also argues in his reply brief that the district court's request for post-verdict briefing constituted an extension of the deadline for pretrial motions pursuant to Federal Rule of Criminal Procedure 12(e).  *See* Aplt. Reply Br. at 5 ("This [exception] includes raising the defense by any extension the court provides." (internal quotation marks omitted)).  Because this argument was not advanced in Dr. Madsen's opening brief, however, it is waived.  *See In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1119 (10th Cir. 2015) ("[W]e generally do not 'review issues raised for the first time in a reply brief . . . .'" (quoting *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1166 n.3 (10th Cir. 2003))).

*Santa Fe*, 696 F.3d 1018, 1024 (10th Cir. 2012). Indeed, it is axiomatic that "pro se litigants must follow the same rules of procedure that govern other litigants." *Shrader v. Biddinger*, 633 F.3d 1235, 1249 n.9 (10th Cir. 2011); *accord Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Accordingly, Dr. Madsen's reliance on his pro se status to excuse the consequences of his procedural delict here—that is, his untimely duplicity challenge to the indictment—is unavailing.

In sum, because Dr. Madsen's duplicity challenge was untimely raised under the federal rules, and he failed to demonstrate good cause for this delay, we deem the challenge waived.

## 3

Having determined that Dr. Madsen waived his challenge to the duplicity of the indictment by raising the error after trial, we necessarily conclude that Dr. Madsen's challenge to the lack of a unanimity instruction or special verdict form is also waived. A defendant's failure to "timely challenge his indictment on duplicity grounds . . . waive[s] any later challenge based on a failure to use a special verdict form to avoid the alleged duplicity problem." *Trammell*, 133 F.3d at 1354; *see United States v. Haber*, 251 F.3d 881, 888–89 (10th Cir. 2001) (holding, based on *Trammell*, that the failure to timely challenge the duplicity of the indictment waived a later challenge to the lack of a jury instruction on unanimity). *But cf.* Fed. R. Crim. P. 30(d) ("Failure to object in accordance with

19

this rule [requiring objections to instructions] precludes appellate review, except as permitted under Rule 52(b).").

## III

Ultimately, Dr. Madsen has waived all three of his appellate arguments by failing to timely raise them before the district court. This marks the end of the road for his appeal. *See Donner v. Nicklaus*, 778 F.3d 857, 864 (10th Cir. 2015) ("In light of the waiver, we will not consider the defendants' argument . . . .").

Therefore, we **AFFIRM** the judgment of the district court.


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge