**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**October 11, 2024**

_____

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

JOHN BENJAMIN THORNTON,

　　Defendant - Appellant.

No. 23-2201
(D.C. No. 2:21-CR-00878-KG-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **McHUGH**, and **MORITZ**, Circuit Judges.

_____

　　Defendant John Benjamin Thornton pleaded guilty to one count of

cyberstalking, in violation of 18 U.S.C. §§ 2261A(2)(B) and 2261, and eight counts

of transmitting threats in interstate commerce, in violation of 18 U.S.C. § 875(c).

The district court sentenced Mr. Thornton to a term of imprisonment of 60 months, to

be followed by a three-year term of supervised release.  Mr. Thornton has now filed a

pro se appeal seeking to withdraw his plea of guilty, challenging the grand jury

---

　　[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

process and the sufficiency of the second superseding indictment, and alleging bias on the part of the district court judge. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reject Mr. Thornton's arguments and affirm the judgment of the district court.

I

In May 2021, agents with the Federal Bureau of Investigation (FBI) received information that Mr. Thornton sent threatening text messages to four different individuals, including his ex-wife T.T. Three of the message recipients lived in Texas and the fourth lived in Florida. FBI agents investigated and obtained records indicating that Mr. Thornton's cell phone was located in Las Cruces, New Mexico, at the time the threatening text messages were sent. FBI agents also determined, based on a review of Mr. Thornton's driver's license, that photographs associated with the threatening text messages were of Mr. Thornton himself.

Mr. Thornton was initially charged by criminal complaint with one count of transmitting in interstate commerce communications containing a threat to injure the person of another, in violation of 18 U.S.C. § 875(c). After filing the complaint, the government filed a motion for a competency hearing and a psychological evaluation of Mr. Thornton. Mr. Thornton's counsel opposed the motion and the magistrate judge denied the motion.

A federal grand jury subsequently returned three indictments against Mr. Thornton. Count 1 of the second superseding indictment charged Mr. Thornton with cyberstalking T.T. between February 4 and May 23, 2021, by the use of text

2

messages and Facebook posts, in violation of 18 U.S.C. §§ 2261A(2)(B) and 2261.

Counts 2 through 9 of the second superseding indictment charged Mr. Thornton with

transmitting threats in interstate commerce, in violation of § 875(c).  The § 875(c)

counts related to Facebook posts concerning, and text and email messages that Mr.

Thornton sent to, T.T. and two other victims in which he threatened to injure or kill

them.

On the eve of trial in December 2021, the district court, at Mr. Thornton's

request, held an impromptu plea hearing.  During the hearing, Mr. Thornton

expressed his intent to plead guilty to all nine counts in the second superseding

indictment.  After a lengthy colloquy with Mr. Thornton, the district court found him

competent and capable of entering into a formal plea of guilty, found his plea to be

knowing and voluntary, and accepted his plea of guilty as to each count in the second

superseding indictment.

Prior to sentencing, Mr. Thornton's counsel filed a motion to determine

competency.  Although Mr. Thornton objected, the district court granted that motion

and ordered Mr. Thornton to be evaluated by a psychologist to determine whether he

suffered from a mental disease or defect that rendered him incompetent.  A

psychologist evaluated Mr. Thornton, diagnosed him as suffering from delusional

disorder, mixed type, and concluded his delusional symptoms were impacting his

functioning to such a degree that he was not competent to stand trial.

The district court held a competency hearing in August 2022.  During the

hearing, the government requested that Mr. Thornton be committed to the custody of

the Attorney General of the United States to be hospitalized at a suitable facility where he would be evaluated and possibly treated until he attained competency. Mr. Thornton's counsel did not oppose the request. The district court granted the government's request and committed Mr. Thornton for purposes of evaluation and treatment.

Mr. Thornton was subsequently evaluated at the Federal Medical Center in Devens, Massachusetts (FMC Devens). The clinical team at FMC Devens diagnosed him as suffering from delusional disorder, mixed type, as well as antisocial and narcissistic personality disorders. Although Mr. Thornton refused to take medication or to fully participate in a formal competency restoration process, the clinical team nevertheless concluded his mental health symptoms did not compromise his ability to understand the nature and consequences of the proceedings against him or to assist in his defense.

In November 2023, the warden at FMC Devens notified the district court of the clinical team's findings and conclusions. The warden attached to his letter a certificate of competency. Government counsel and counsel for Mr. Thornton stipulated to the certificate of competency and agreed there was no need to hold a competency hearing. The district court found Mr. Thornton to be competent and ready to proceed with his criminal case.

The district court held a sentencing hearing in December 2023. At the outset of the hearing, Mr. Thornton asserted he "ha[d] not signed a plea" nor "seen one." R. vol. 3 at 9. Government counsel rebutted that assertion, noting that Mr. Thornton

"pled straight to the indictment the Friday before trial." *Id.* The district court in turn noted it recalled taking Mr. Thornton's guilty plea by video and that it found Mr. Thornton competent at that time. Mr. Thornton, however, continued to maintain he "never signed a plea agreement" and he argued the prosecutor "falsified the evidence." *Id.* at 12. Mr. Thornton also refused to be seated, continued to argue with the district court, and ultimately had to be removed from the courtroom. The district court noted on the record that it was "construing his conduct to be a waiver of his right to be present for sentencing and his right to allocute." *Id.* at 13. The district court, after conferring with counsel, allowed Mr. Thornton to return to the courtroom and advised him that if he could not "comply or conform to the rules of the courtroom," then he would be removed. *Id.* at 22. Mr. Thornton stated that he could not comply. He in turn asserted that the government "falsified the evidence tags in this case," and that he was never arraigned nor "saw a plea." *Id.* at 23. Mr. Thornton then voluntarily left the courtroom. The district court noted on the record that "Mr. Thornton ha[d] waived his right to be present" at sentencing. *Id.*

Although the presentence investigation report (PSR) proposed a two-level upward adjustment pursuant to U.S.S.G. § 2A6.1(b)(2)(A) on the grounds that the offense involved more than two threats, the district court found there were "many, many more than two" threats and therefore concluded that an additional two-level increase was necessary. R. vol. 3 at 66. The district court also declined to apply a two-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), noting that Mr. Thornton's "conduct" and "words spoken in

open court" were not "appropriately remorseful." *Id.* at 66–67. That resulted in a

total offense level of 24 and a resulting advisory guidelines sentencing range of 51 to

63 months. The district court imposed a sentence of imprisonment of 60 months,

citing the seriousness of Mr. Thornton's conduct, the need to deter future criminal

conduct, the need to protect the public, and the need to protect the victims from

Mr. Thornton's future criminal conduct. The district court also imposed a three-year

term of supervised release that included special conditions, such as mandatory

participation in mental health treatment and supervision of computer activities.

Mr. Thornton's counsel filed a timely notice of appeal. Mr. Thornton has

since chosen to represent himself on appeal.

## II

## A

We begin by liberally construing Mr. Thornton's pro se appellate pleadings as

arguing that the district court erred, at the time of sentencing, by failing to sua sponte

allow him to withdraw his guilty plea.[1] Typically, we review a district court's denial

of a motion to withdraw a guilty plea "under our 'deferential' abuse-of-discretion

---

[1] The overarching theme in all of Mr. Thornton's pleadings is that he is innocent of the charges that were asserted against him in the second superseding indictment. He also argues that he never saw, nor orally accepted the terms of, any written plea agreement during the district court proceedings. In addition, he argues that Counts 1 and 2 of the original indictment "still remain," that "[a] trial on [the] merits" of those claims "with a reset docket is needed," and that he "will be representing [him]self, Pro Se" at any such trial. Aplt. Br. at 3. And, ultimately, he argues that "[a] complete dismissal is warranted." Aplt. Reply Br. at 20. "Because [Mr. Thornton] is pro se, we liberally construe his filings, but we will not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

standard." *United States v. Dominguez*, 998 F.3d 1094, 1103 (10th Cir. 2021) (quoting *United States v. Byrum*, 567 F.3d 1255, 1259 (10th Cir. 2009)).  But because Mr. Thornton did not seek to withdraw his guilty plea in the district court, we review only for plain error.  *See generally United States v. Vonn*, 535 U.S. 55, 59 (2002) (holding "that a silent defendant has the burden to satisfy the plain-error rule").  To establish plain error, Mr. Thornton "must show (1) the district court erred, (2) the error was plain, (3) the error affected [his] substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings."  *See United States v. Miller*, 978 F.3d 746, 757 (10th Cir. 2020) (internal quotation marks omitted).

"Defendants do not have an absolute right to withdraw a guilty plea." *United States v. Siedlik*, 231 F.3d 744, 748 (10th Cir. 2000).  Instead, a defendant "bears the burden of establishing a fair and just reason for his request."  *Dominguez*, 998 F.3d at 1103 (internal quotation marks omitted).  In assessing whether a defendant has established a fair and just reason for withdrawing his guilty plea, "we have typically considered" seven factors:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether [he] delayed in filing his motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to [him]; (6) whether [his] plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

*Id.* (brackets omitted) (quoting *United States v. Yazzie*, 407 F.3d 1139, 1142 (10th Cir. 2005) (en banc).

The first of these factors weighs against any finding of error on the part of the district court. Mr. Thornton has, as we have noted, effectively asserted his innocence in his appellate pleadings. But he did not clearly do so during the district court proceedings. To be sure, Mr. Thornton argued at the outset of his sentencing hearing that he "was never arraigned on th[e] [second superseding] indictment" and, as a result, it was "impossible for [him] to enter a plea of not guilty or guilty." R. vol. 3 at 8. But the prosecutor and the district court refuted that assertion, noting that Mr. Thornton was arraigned on all three indictments. Mr. Thornton then asserted, as he does now on appeal, that he did "not sign[] a plea" and "ha[d] not seen one." *Id.* at 9. The prosecutor noted that in response the parties had reached no plea agreement and that, instead, Mr. Thornton "pled straight to the [second superseding] indictment the Friday before trial." *Id.* The district court likewise noted on the record that it recalled personally taking Mr. Thornton's guilty plea. Mr. Thornton did not dispute that he pleaded guilty. Instead, he asserted that he "pled guilty to the [first superseding] indictment" and "was not aware" that it failed to adequately allege "the mens rea." *Id.* at 11. Thus, although Mr. Thornton argued that the first superseding indictment was legally insufficient, he failed to assert his innocence of the charges contained in the second superseding indictment.

The third, fifth, and sixth factors also weigh against any finding of error on the part of the district court. Regarding the third factor, Mr. Thornton never moved to withdraw his guilty plea and raised concerns about the lack of a plea agreement and the sufficiency of the first superseding indictment only at sentencing. As for the fifth

8

factor, a review of the district court proceedings indicates that Mr. Thornton was represented at all times by appointed counsel and thus the close assistance of counsel was available to him had he wished to seek to withdraw his guilty plea. Regarding the sixth factor, the district court conducted a lengthy colloquy with Mr. Thornton at the time he entered his oral plea of guilty to the second superseding indictment and concluded that Mr. Thornton's plea was knowing and voluntary. Notably, Mr. Thornton does not dispute that conclusion.

That leaves the second, fourth, and seventh factors. The government addresses these factors in its appellate response brief and asserts "that withdrawal would prejudice the government and the [district] court" and "waste judicial resources." Aple. Br. at 32. Mr. Thornton makes no attempt in his appellate reply brief to refute these assertions. We therefore conclude these three factors also weigh against any finding of error on the part of the district court.

For these reasons, we conclude Mr. Thornton has failed to establish the district court erred by failing to sua sponte allow him to withdraw his guilty plea.

B

We also liberally construe the arguments in Mr. Thornton's appellate briefs as challenging the grand jury process and the sufficiency of the second superseding indictment. For example, in his opening brief, Mr. Thornton alleges he provided "conversation evidence" to the FBI "via cell phone on 5-24-21 . . . to assist them in investigating counts 1 and 2" of the original indictment, which charged him with making threats in interstate commerce against his ex-wife on May 18, 2021, in

9

violation of 18 U.S.C. § 875(c).  Aplt. Br. at 2.  That "conversation history,"
Mr. Thornton alleges, "specifically eliminate[d], beyond a reasonable doubt,
'knowingly and willfully' from being applicable to count 3" of the original
indictment, which charged him with violating § 875(c) by way of a Facebook post he
made on May 23, 2021.  *Id.*  According to Mr. Thornton, "[n]o complaints were made
by" his ex-wife "about Facebook Posts, because [he] specifically told her what the
posts were" and, thus, "Count 3 d[id] not have the needed elements for an indictment
to happen."  *Id.*

Mr. Thornton also argues that the Count 1 cyberstalking charge in each of the
superseding indictments "is the result of counts 1 and 3" from the original indictment
"being combined."  *Id.*  He in turn argues that "[t]he dismissal of 'count 3' in the
[first] indictment dismisses all cyberstalking 'count 1' indictments."  *Id.*  In addition,
he argues that "[a]ll pleadings to the superseding indictment must be expunged."  *Id.*

Federal Rule of Criminal Procedure 12(b)(3) provides that challenges to the
grand-jury proceeding or the sufficiency of an indictment "must be raised by pretrial
motion if the basis for the motion is then reasonably available and the motion can be
determined without a trial on the merits . . . ."  Fed. R. Crim. P. 12(b)(3).  Relatedly,
Rule 12(c)(3) states that "[i]f a party does not meet the deadline for making a
Rule 12(b)(3) motion, the motion is untimely."  Fed. R. Crim. P. 12(c)(3).
Rule 12(c)(3) also states, however, that "a court may consider the defense, objection,
or request if the party shows good cause."  *Id.*

10

After the first superseding indictment was returned, Mr. Thornton's appointed counsel filed a motion to dismiss that indictment on a number of grounds, including that the § 875(c) counts failed to allege Mr. Thornton intended or knew that the alleged victims of his messages and Facebook posts would view them as threats. The motion to dismiss did not, however, include any of the arguments Mr. Thornton now asserts in his appellate pleadings. The government responded to that motion, in part, by seeking the second superseding indictment, which included in each of the § 875(c) counts specific intent-to-threaten language. The district court denied the motion to dismiss, noting in part the filing of the second superseding indictment. Less than a month after the second superseding indictment was returned, and on the eve of trial, Mr. Thornton entered an oral plea of guilty, without benefit of a plea agreement, to all of the charges in the second superseding indictment. At no point during the plea hearing did Mr. Thornton or his counsel raise any challenge to the grand jury process or to the sufficiency of the second superseding indictment.

In light of this procedural history, we conclude the arguments that Mr. Thornton now seeks to assert regarding the grand jury process and the sufficiency of the second superseding indictment are untimely. We further conclude that Mr. Thornton has failed to show good cause for his delay in asserting these arguments. We therefore deem his arguments waived. *See United States v. Bowline*, 917 F.3d 1227, 1237 (10th Cir. 2019) ("[W]e will not review an untimely Rule 12 argument absent good cause."); *United States v. Madsen*, 614 F. App'x 944, 953

11

(10th Cir. 2015) (deeming challenge to indictment waived because it was untimely and defendant failed to demonstrate good cause for the delay).

C

Lastly, we address Mr. Thornton's argument that the district court was "bias[ed] towards" him "due to wrongful arrests for domestic violence in Fulshear, Texas."[2]  Aplt. Br. at 4.  Mr. Thornton argues that those "charges were dismissed" and he "never should have been arrested."  *Id.*

"Normally, a party alleging judicial bias should move for recusal, and must do so in a timely fashion."  *United States v. Nickl*, 427 F.3d 1286, 1297 (10th Cir. 2005) (internal quotation marks omitted).  Because Mr. Thornton did not move for recusal, we review his claim of bias for plain error.  *Id.*

"The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases."  *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).  A judge must recuse himself "if sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality."  *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000).

Although Mr. Thornton's appellate arguments are not entirely clear, we construe them in light of the record on appeal as asserting the district judge exhibited bias during the sentencing hearing by basing its sentence, at least in part, on

---

[2] In his appellate reply brief, Mr. Thornton argues that the district court judge "is mentally ill . . . ."  Aplt. Reply Br. at 12.  We will consider that argument as part of Mr. Thornton's assertion that the district court was biased against him.

Mr. Thornton's prior arrests for domestic violence. During the sentencing hearing,

Mr. Thornton's counsel objected to information in the PSR indicating that Mr.

Thornton was arrested in Texas in 2016 and 2017 in connection with three incidents

of domestic violence. The PSR noted that prosecution was declined in the first

incident, the second case was dismissed due to insufficient evidence, and the third

case was dismissed because the victim either failed to respond or recanted.

Mr. Thornton's counsel argued that, even though this information did not impact

Mr. Thornton's criminal history category, it was nevertheless prejudicial because the

government was seeking an upward variance based on the information. Government

counsel responded that their request for an upward variance had nothing to do with

the domestic violence arrests and instead was based on other conduct by

Mr. Thornton.[3] As a result, the district judge concluded the language in the PSR

regarding the domestic violence matters was not prejudicial and did not need to be

removed. Later during the sentencing hearing, the district judge agreed with the PSR

that a two-level upward adjustment to the offense level was warranted under

U.S.S.G. § 2A6.1(b)(2)(A) because the offense involved more than two threats. But

it also concluded that an additional two-level increase was necessary because the

offense involved significantly more than two threats. The district judge also found

that Mr. Thornton's conduct and statements in court failed to demonstrate remorse

---

[3] The record indicates that the government sought an upward variance based upon correspondence Mr. Thornton sent to one of his victims that included a threat to kill another of his victims.

and therefore declined to apply a two-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

These circumstances fail to give rise to any grounds upon which a reasonable, objective person could question the district judge's impartiality. Where, as here, a judge's words or actions are motivated by events originating within the context of judicial proceedings, they are normally insulated from charges of bias. *Liteky v. United States*, 510 U.S. 540, 554–56 (1994). Thus, "adverse rulings cannot in themselves form the appropriate grounds for disqualification." *Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997) (internal quotation marks omitted). We therefore conclude Mr. Thornton has failed to establish plain error.[4]

### III

The judgment of the district is affirmed. Mr. Thornton's motions to supplement the record, to strike the government's brief, and to be compensated equally to an attorney are denied.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[4] To the extent Mr. Thornton is also alleging the district judge was biased because he removed Mr. Thornton from the courtroom during the sentencing hearing, we likewise conclude there is no basis for disqualification. *See Liteky*, 510 U.S. at 556 (noting "[a] judge's ordinary efforts at courtroom administration," even if "stern and short-tempered," are "immune" from charges of bias and partiality).